DONNA COCKRUM *et al.*, Plaintiffs-Appellants, *v.* DR. GEORGE BAUMGARTNER *et al.*, Defendants-Appellees.—EDNA RAJA, a/k/a Edna Acker, *et al.*, Plaintiffs-Appellants, *v.* DR. A. TULSKY, Defendant.—(MICHAEL REESE HOSPITAL AND MEDICAL CENTER, Defendant-Appellee.)

First District (4th Division)   Nos. 80-1245, 80-1300 cons.

Opinion filed July 2, 1981.—Rehearing denied September 22, 1981.

Ash, Anos, Harris & Freedman and Addis & Brenner, Ltd., both of Chicago, for appellants Edna Raja and Afzal Raja.

Faber & Cunniff, Ltd., and Keith L. West, both of Chicago, for appellants Donna Cockrum and Leon Cockrum.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago, for appellee Dr. George Baumgartner.

Lord, Bissell & Brook, of Chicago, for appellee Michael Reese Hospital and Medical Center.

Mr. JUSTICE JIGANTI delivered the opinion of the court:

The question raised by these two cases, consolidated on appeal, is whether the parents of a healthy child born as a result of a negligently performed sterilization operation or a negligent misdiagnosis of pregnancy, may recover as an element of damages the expenses of raising and educating the child.

In *Cockrum v. Baumgartner*, the defendant physician attempted to perform a vasectomy upon the plaintiff, Leon Cockrum. The plaintiff returned for a sperm test one month later and was informed by the defendant that the operation was successful. Approximately six weeks after the date of the test, Donna Cockrum learned that she was pregnant. The defendant then performed another sperm test upon Leon Cockrum and detected the presence of live sperm cells. Donna and Leon Cockrum subsequently became the parents of a healthy boy. They brought this action against the defendant seeking to recover, among other things, the expenses of raising and educating the child.

In *Raja v. Tulsky*, Dr. Tulsky performed a bilateral tubal cauterization upon the plaintiff, Edna Raja, which was intended to render her sterile. Approximately five years later, Edna Raja began to experience indications of pregnancy and went to the Michael Reese Gynecology Clinic for an examination. She was informed that she was not pregnant. Two months later, after experiencing additional symptoms of pregnancy, Edna Raja returned to the clinic for another examination. She was advised that she was in the advanced stages of pregnancy and that it was no longer medically safe for her to terminate the pregnancy. She subsequently gave birth to a healthy girl. Edna Raja and her husband, Afzul Raja, brought an action against Dr. Tulsky and Michael Reese Hospital. The counts against Dr. Tulsky were dismissed as barred by the statute of limitations and are not pertinent to this appeal. The action against Michael Reese Hospital was based upon the negligent diagnosis of Edna Raja's condition, resulting in her inability to safely terminate her pregnancy. One element of damages sought by the plaintiffs was compensation for the expenses of raising and educating the child.

In both causes, the trial court dismissed the counts seeking compensation for the expenses of raising and educating the child. The dismissals were based on *Wilczynski v. Goodman* (1979), 73 Ill. App. 3d 51, 391 N.E.2d 479, where the court denied recovery for those elements of damages.

Ethical and moral considerations aside, the cause before us is analytically indistinguishable from an ordinary medical malpractice action. The essential elements of tort liability are alleged. The plaintiffs have alleged that because of the defendants' breach of duty to properly treat and advise them, they will be required to incur the expenses of rearing the unplanned child. According to traditional tort principles, once these

allegations of duty, breach of duty and proximate cause are proven, the tortfeasor is liable for all damages which ordinarily and in the natural course of things flow from the commission of the tort. (*Sorenson v. Fio Rito* (1980), 90 Ill. App. 3d 368, 413 N.E.2d 47.) The standard measure of damages in tort thus seeks to place injured plaintiffs in the position that they would have been in had no wrong occurred. *Myers v. Arnold* (1980), 83 Ill. App. 3d 1, 403 N.E.2d 316.

The defendants do not dispute the legal sufficiency of the allegation that their negligence was the direct and proximate cause of the expenses which the plaintiffs seek to recover. Instead, they argue that for reasons of public policy, damages should be limited to pregnancy and birth related costs. The defendants rely on *Wilczynski v. Goodman* (1979), 73 Ill. App. 3d 51, 391 N.E.2d 479, for the proposition that public policy deems the birth of a healthy child a precious gift rather than a compensable wrong.

■■ While we agree that most parents hold the sentiment that the birth of a healthy albeit unplanned child is always a benefit, we are not inclined to raise this sentiment to the level of public policy. The uniqueness of life is in no way denigrated by a couple's choice not to have a child. Neither the individual nor society as a whole is harmed by the exercise of this choice. Recognizing this, the right to limit procreation through contraception and, to a limited extent abortion, has been held to come within a constitutionally protected "zone of privacy." (*Griswold v. Connecticut* (1965), 381 U.S. 479, 14 L. Ed. 2d 510, 85 S. Ct. 1678; *Roe v. Wade* (1973), 410 U.S. 113, 35 L. Ed. 2d 147, 93 S. Ct. 705.) Regardless of motivation, a couple has the right to determine whether they will have a child. That right is legally protectible and need not be justified or explained. The allowance of rearing costs is not an aspersion upon the value of the child's life. It is instead a recognition of the importance of the parent's fundamental right to control their reproductivity. (See Comment, *Wrongful Life: Birth Control Spawns a Tort*, 13 J. Mar. L. Rev. 401, 420 (1980).) We cannot endorse a view that effectively nullifies this right by providing that its violation results in no injury. For these reasons, we are not persuaded that public policy considerations can properly be used to deny recovery to parents of an unplanned child of the full measure of all damages proximately caused by a physician's negligence.

■■ Several courts which have allowed rearing costs as a proper element of damages have permitted the defendant to show that the plaintiff's financial injury has been offset to a certain degree by the benefits of parenthood. (See *Troppi v. Scarf* (1971), 31 Mich. App. 240, 187 N.W.2d 511; *Sherlock v. Stillwater Clinic* (Minn. 1977), 260 N.W.2d 169.) In doing so, these courts have relied primarily upon the so-called "benefits rule" found in section 920 of the Restatement of Torts, which provides:

"When the defendant's tortious conduct has caused harm to the

plaintiff or to his property and in so doing has conferred *a special benefit to the interest of the plaintiff that was harmed,* the value of the benefit conferred is considered in mitigation of damages, to the extent that this is equitable." (Emphasis added.) (Restatement (Second) of Torts §920, at 509 (1979).)

To the extent that this section has been used to permit the emotional rewards of parenthood to offset its financial costs, we believe it has been misapplied. Section 920 clearly provides that a benefit to the plaintiff caused by the defendant's tortious act may be considered in mitigation of the plaintiff's injury only where the benefit is to the same interest which was harmed. The rewards of parenthood should not be allowed in mitigation of rearing costs because "these rewards are emotional in nature and, great though they may be, do nothing whatever to benefit the plaintiff's injured financial interest." Kashi, *The Case of the Unwanted Blessing: Wrongful Life,* 31 U. Miami L. Rev. 1409, 1415 (1977).

■■ It has been suggested that parents who seek to recover the costs of raising and educating an unplanned child should be required to mitigate damages through abortion or adoption. It is accepted, however, that the doctrine of mitigation requires only that reasonable measures be taken:

"If the effort, risk, sacrifice, or expense which the person wronged must incur in order to avoid or minimize a loss or injury is such that under all the circumstances a reasonable man might well decline to incur it, a failure to do so imposes no disability against recovering full damages." (C. McCormick, Damages §35, at 133 (1935).)

The decision not to conceive a child is totally distinguishable from the decision to abort or place for adoption a child who is already conceived. We do not believe it is reasonable for a defendant to require the parents of an unplanned child to consider abortion or adoption. These alternatives are uniquely personal choices which cannot be forced upon parents as a means of mitigating damages.

In expressing our conclusion that the cost of raising and educating an unplanned child is a proper element of damages, we are aware that another division of this court reached a different result in *Wilczynski v. Goodman* (1979), 73 Ill. App. 3d 51, 391 N.E.2d 479. In *Wilczynski,* the court recognized that the parents of a child born as a proximate result of a negligently performed abortion could bring a negligence action against the physician. However, recoverable damages were limited to pregnancy and birth related costs. The court denied recovery of rearing costs based on its view that the public policy of this State as expressed in section 1 of the Illinois Abortion Act (Ill. Rev. Stat. 1977, ch. 38, par. 81—21) regards the birth of a healthy child as an "esteemed right" rather than a compensable wrong. (*Wilczynski,* 73 Ill. App. 3d 51, 62, 391 N.E.2d 479, 487.) As previously stated, we do not believe that this interpretation of public

policy can properly be used to deny recovery of the full measure of damages caused by the defendant's negligence. To the extent that *Wilczynski* disallows these costs, we disagree with that opinion.

For the foregoing reasons, the judgments of the circuit court are reversed.

Reversed.

Mr. JUSTICE LINN, specially concurring:

I agree that parents should be able to seek compensation for the costs of raising and educating a healthy child in cases such as the present ones. In doing so, I recognize that the decision reached today contradicts a previous decision from another division of this court. Though normally I would feel compelled to follow recent decisions from other divisions of this court, I cannot in good conscience accept either the reasoning or the result of the opinion in *Wilczynski v. Goodman* (1979), 73 Ill. App. 3d 51, 391 N.E.2d 479, as far as it determined that parents could not seek compensation for the costs of rearing a healthy child when a physician's negligence in performing a legal abortion caused the child to be born.

The reasoning relied upon by the court in *Wilczynski* was that such compensation would violate a supposed public policy which considers all abortions wrong, regardless of the actual law, and thus considers life to be an "esteemed right" rather than a compensable wrong. (73 Ill. App. 3d 51, 62, 391 N.E.2d 479, 487.) Though such reasoning may be applicable to whether the unwanted healthy child could state a cause of action against the physician on his own behalf, it has no application to whether the parents should recover damages for the injury to their rights. Even assuming life is an "esteemed right" and one's life is precious to oneself, it does not follow that one's existence automatically confers a benefit and no burden on those having a duty to assure one's life is preserved throughout childhood.

Additionally, to raise, as was done in *Wilczynski*, questions of ethics, morality, and so-called "pro-life" has no place in a case concerning whether a physician should be liable for his negligence and suggests that emotion rather than reasoning can be used to determine the issue. The only real issue is one of compensable damages, and this question must be determined without indulging in philosophical or religious nonissues.

Though I agree that the parents should be allowed to seek compensation for the costs of rearing a healthy child, I cannot agree with the conclusion that the benefits the parents may derive from the parent-child relationship should be ignored in determining the amount of damages. My fellow Justice believes that such benefits cannot be considered because no special benefit has been conferred on the interest that has

been harmed—the right of the parents to choose whether they will have a child. However, I think that this narrow application of the "special benefits" rule will create inequitable results because it presumes that the injury done to the parents' interests is the same in all cases. One must recognize that the reasons parents have for practicing birth control vary and any injury done to their interests as parents will be different in each case. Can it be said that parents in their twenties who merely wanted to postpone having a child will suffer the same degree of injury from a physician's negligence in causing a child to be born as will parents in their forties who already have grown children and have decided not to undergo the burden of raising any more children? Damages should be awarded based on the degree of injury that has occurred, and by allowing the potential benefits that the parents may derive from the parent-child relationship to be considered as one factor in determining the amount of damages will result in redressing the degree of injury that has been caused.

Thus, I believe the proper rule to be that any potential benefits that the parents may derive from the parent-child relationship, whether they be in the form of companionship, the possibility of future financial support, or otherwise, should be one factor the trier of fact should be allowed to consider in determining the amount of damages. The injury done by a physician's negligence is, in effect, an injury done to the parents' overall "family interests" and the benefits that may be derived are benefits to those "family interests." Accord, *Troppi v. Scarf* (1971), 31 Mich. App. 240, 187 N.W.2d 511.

However, this does not mean that I agree with the defendants' argument that in all cases the parents will be expected to derive such an overwhelming emotional benefit from having a healthy child that damages should be nominal, if anything, as a matter of law. Whether there will be any benefits and the value of any possible benefits are not issues of law. Each case depends on its own facts. Poor parents with many children may actually be expected to derive more stress than pleasure from having an additional child. Older parents who have chosen not to have any more children may not be expected to derive the same degree of benefit from having an additional child as younger parents who have chosen merely to postpone having a child. The trier of fact should be allowed to consider many factors, including family size, family income, the age of the parents, and marital status, to determine the existence or value of any potential benefits. *Troppi v. Scarf* (1971), 31 Mich. App. 240, 187 N.W.2d 511.

Finally, I admit that the determination of the existence or value of any possible benefits involves a degree of speculation, but I do not see how allowing the trier of fact to make the determination will result in any more speculation than when the trier of fact is presently called upon to

determine the existence or value of pain and suffering in personal injury cases, of severe emotional distress in cases of intentional infliction of emotional distress, or of companionship in loss of consortium cases.

Accordingly, I concur in the decision of this court as far as it allows the parents to seek compensation for the costs of raising a healthy child in cases such as the present ones, but I would allow any possible benefits the parents may derive from the parent-child relationship to be one factor a trier of fact may consider in determining the amount of damages.

Mr. PRESIDING JUSTICE ROMITI, specially concurring:

I too join with Justice Jiganti in his determination that the plaintiffs in these cases are entitled to seek recovery for the expenses of raising and educating the unplanned children which they allege were the result of defendant's negligence. However, I also join with Justice Linn, but only to the extent of finding that the offsetting benefits plaintiffs may derive from having these unplanned children should neither be excluded as a matter of law from the calculation of damages nor should they be held to automatically offset all damages. As was stated in *Troppi v. Scarf* (1971), 31 Mich. App. 240, 256-57, 187 N.W.2d 511, 518-19:

> "* * * we believe [the special benefits] rule to be essential to the rational disposition of this case and the others that are sure to follow.
>
> * * *
>
> The essential point, of course, is that the trier must have the power to evaluate the benefit according to all the circumstances of the case presented. Family size, family income, age of the parents, and marital status are some, but not all, the factors which the trier must consider in determining the extent to which the birth of a particular child represents a benefit to his parents. That the benefits so conferred and calculated will vary widely from case to case is inevitable."

Allowing the application of the special benefits rule in these cases will grant the trier of fact a degree of flexibility in calculating damages which should result in more equitable awards, a goal expressed in the very terms of the rule.