United States District Court
District of New Hampshire
No. 81-150

FREDERICA J. KINGSBURY & *a.*

v.

ALEXANDER C. SMITH, M.D., & *a.*

March 10, 1982

*Burns, Bryant, Hinchey, Cox & Shea,* of Dover (*Robert P. Shea* on the brief and orally), for the plaintiffs.

*Wadleigh, Starr, Peters, Dunn & Kohls,* of Manchester (*Theodore Wadleigh* on the brief and orally), for the defendants.

BATCHELDER, J.   This case, raising questions concerning whether New Hampshire recognizes a claim for "wrongful birth" and, if so, what damages may be considered by the trier of fact, comes to us from a certification of questions from the United States District Court for the District of New Hampshire (*Devine,* C.J.). The questions are:

> "1. Under New Hampshire law, may recovery be had for the 'wrongful birth', *i.e.,* the birth of a child which would not have occurred 'but for' the act or omission of the defendant tortfeasor?
>
> 2. If the answer to Question No. 1 is in the affirmative, what elements of damages are to be included in the recovery of the parents in such action?
>
> 3. If the answer to Question No. 1 is in the affirmative, may a husband and father recover for loss of consortium in such type of action?
>
> 4. If the answer to Question No. 1 is in the affirmative, to what extent, if any, will the defendants be permitted any right of setoff as against the damages to be allowed the parents?"

The facts certified by the District Court which form the basis for this decision are as follows:

The plaintiffs, Frederica J. Kingsbury and Bobby Kingsbury, respectively wife and husband, reside in South Sanford, Maine. The defendants, Doctors Alexander C. Smith and Charles C. Thompson, the Rochester OB–GYN Professional Association, and Frisbie Memorial Hospital, are individual and corporate citizens of Rochester, New Hampshire.

Prior to April 4, 1977, the plaintiffs sought obstetrical care from Doctor Smith for Frederica Kingsbury, who was expecting their third child. They advised Doctor Smith that they did not desire to conceive another child. Doctor Smith accordingly arranged for Doctor Thompson to perform a tubal ligation on Mrs. Kingsbury, in which Doctor Smith assisted, at Frisbie Memorial Hospital on April 4, 1977, shortly after the birth of the third child.

On October 19, 1978, however, Mrs. Kingsbury was again admitted to Frisbie Memorial Hospital, where a fourth child, born normal, healthy, alive and well, was delivered by Doctor Smith. On that date, Doctor Thompson again was requested to undertake further sterilization procedures and did so. The plaintiffs then filed a diversity action in federal district court.

■ Adopting the distinctions set forth in *Speck v. Finegold*, 408 A.2d 496, 502 (Pa. Super. Ct. 1979), *aff'd*, 50 U.S.L.W. 2432 (Pa. 1981), we construe this "wrongful birth" action, as described in the certified questions, as an action for "wrongful conception," which is an action for damages arising from the birth of a child to which a negligently performed sterilization procedure, *see, e.g., Bowman v. Davis*, 48 Ohio St. 2d 41, 46, 356 N.E.2d 496, 499 (1976) (per curiam), or a negligently filled birth control prescription which fails to prevent conception, *see, e.g., Troppi v. Scarf*, 31 Mich. App. 240, 254, 187 N.W.2d 511, 517 (1971), was a contributing factor.

Throughout its course, the common law has recognized that life on this planet is not free from all risks and, in this recognition, has endeavored to provide rational remedies to those persons whose lot in life has taken a detrimental turn as the result of the conduct of others who have breached a duty owed to the injured party. In many situations, the outlines of the duty are more apparent than the remedy which society chooses to provide. Such is the case at hand.

■■ Courts which have considered this type of case have not reached a consensus with respect to what damages, if any, may be

recoverable. The body of developing law indicates the existence of four different legal positions:

1. *Non Recognition of Any Damages Resulting from the Birth of the Child.* Although our research shows that no court presently holds that it will not permit any damages for wrongful conception, some commentators have read *Christensen v. Thornby*, 192 Minn. 123, 255 N.W. 620 (1934), for this proposition. *See, e.g.*, Comment, *Liability for Failure of Birth Control Methods*, 76 COLUM. L. REV. 1187, 1197 (1976). The *Christensen* case was based upon deceit in the representations by the doctors to the effect that a sterilization operation would prevent conception by the wife, and, in denying relief, the court held that fraudulent intent had not been alleged and stressed the fact that malpractice was not claimed. *Christensen*, 192 Minn. at 126, 255 N.W. at 622. Dicta in the case stated that no damages were foreseeable because they were too remote. Additional dicta in the case expressed what other courts have since adopted and referred to as the "blessing" theory.

> "Instead of losing his wife, the plaintiff has been blessed with the fatherhood of another child. The expenses alleged are incident to the bearing of the child, and their avoidance is remote from the avowed purpose of the operation. As well might plaintiff charge defendant with the cost of nurture and education of the child during its minority."

*Id.*, 255 N.W. at 622. The Minnesota Supreme Court in a more recent wrongful conception case, *Sherlock v. Stillwater Clinic*, 260 N.W.2d 169, 172–73 (Minn. 1977), rejected the interpretation of *Christensen* that it forbade damages for the resultant birth and the costs of raising the child, pointing out that the issue of damages had never been reached in *Christensen*.

2. *Complete Recovery for the Costs of Child Rearing.* The extreme edge or frontier of the contemporary view is expressed in a 1967 California case, where the court, dealing with a negligently performed tubal ligation, held that, upon a finding of a breach of duty, the plaintiff's recoverable damages could include a sum "to replenish the family exchequer so that the new arrival will not deprive the other members of the family of what was planned as their just share of the family income." *Custodio v. Bauer*, 251 Cal. App. 2d 303, 324, 59 Cal Rptr. 463, 477 (1967). *See Cockrum v. Baumgartner*, 99 Ill. App. 3d 271, 273, 425 N.E.2d 968, 970 (1981).

*Christensen* and *Custodio*, in contemporary common law, are perhaps more symbolic of approaches to claims in the area of

wrongful conception than important for their contribution to the common law. Each case contains factual and procedural limitations on its authority.

3. *Child Rearing Costs Offset by the Benefits of Parenthood.* The third approach is expressed in cases which recognize a cause of action and permit recovery for the costs of child rearing, but require an offset on the reasoning and application of the "benefits" rule of the Restatement (Second) of Torts § 920 (1977). *See, e.g., Troppi v. Scarf,* 31 Mich. App. at 254–55, 187 N.W.2d at 517–18; *Sherlock v. Stillwater Clinic,* 260 N.W.2d at 176.

> "Thus, in obedience to the rule of law, we feel compelled to conclude that where the parents of an unplanned, healthy child choose to include this item of damages in their claim, hopefully after being advised of the psychological consequences which could result from litigating such claim, we will permit them to recover the reasonably foreseeable costs of rearing, subject to an offset for the value of the benefits conferred to them by the child."

*Id.*

4. *Exclusion of Child Rearing Costs as Damages.* Some jurisdictions have refused to permit recovery of the costs of raising the child for public policy reasons. *See, e.g., Coleman v. Garrison,* 349 A.2d 8, 13–14 (Del. 1975); *Wilczynski v. Goodman,* 73 Ill. App. 3d 51, 62, 391 N.E.2d 479, 487 (1979). These jurisdictions limit recovery to the hospital and medical expenses of the pregnancy, the costs of sterilization, pain and suffering connected with the pregnancy, and the loss of the mother's wages during that time.

Assuming that every element necessary to support an action of medical malpractice is present, the common law of our State will permit a claim for "wrongful birth." Non-recognition of any cause of action for wrongful conception leaves a void in the area of recovery for medical malpractice and dilutes the standard of professional conduct and expertise in the area of family planning which has been clothed with constitutional protection. *See Roe v. Wade,* 410 U.S. 113 (1973); *Eisenstadt v. Baird,* 405 U.S. 438 (1972); *Griswold v. Connecticut,* 381 U.S. 479 (1965).

However, we reject the approach that allows unlimited recovery for the costs of raising the child. The general rationale for unlimited recovery is stated in *Cockrum v. Baumgartner,* 99 Ill. App. 3d 271, 425 N.E.2d 968 (1981). "Ethical and moral considerations aside, the cause before us is analytically indistinguishable

from an ordinary medical malpractice action." *Id.* at 272, 425 N.E.2d at 969. We disagree with the Illinois court, because it is difficult to imagine a malpractice case which is more readily distinguishable. In no other situation is a new human life created.

■ We also reject the theory which limits recovery by the application of the "benefits" rule of the Restatement (Second) of Torts § 920: "Where the defendant's tortious conduct has caused harm to the plaintiff or to his property and in so doing has conferred a special benefit to the interest of the plaintiff that was harmed, the value of the benefit conferred is considered in mitigation of damages, to the extent that this is equitable." The application of this compensating factor in cases such as this is nothing more nor less than the application of an offset to reduce the magnitude of verdicts and lessen the monetary shock to the medical tortfeasor and his insurer. To say that a benefit can be calculated from the total failure of the medical service or treatment giving rise to the action, based upon its failure, is an illogical extension of an otherwise sound legal proposition.

■ Having today recognized a wrongful conception action as a part of our body of law, we join those jurisdictions which, for public policy reasons, limit the recovery of damages, where applicable, to the hospital and medical expenses of the pregnancy, the cost of sterilization, pain and suffering connected with the pregnancy, and loss of the mother's wages during that time. To hold otherwise would be to sanction the illogical application of the "benefits" rule or to place upon the parents the awesome choices of having an abortion or putting the child up for adoption as a course of mitigating damages. We believe that we have adopted the humane and common sense view which allows recovery for the tortfeasor's negligence without placing an unreasonable burden upon him and creating a windfall to the parents. The ruling today is limited to the facts of this case, involving a faulty sterilization procedure that resulted in the birth of a healthy child. Other and differing circumstances, including but not limited to the birth of an abnormal or injured child, might lead us to a different conclusion.

■ We are also asked to rule on whether the husband may bring a cause of action for his loss of consortium. Our answer is controlled by RSA 507:8-a. The wife's cause of action sounds in negligence, so that a separate cause of action for the husband's loss of consortium is permitted by statute. RSA 507:8-a. *See Reid v. Spadone Mach. Co.,* 119 N.H. 198, 199, 400 A.2d 54, 54–55 (1979);

*LaBonte v. Nat'l Gypsum Co.*, 110 N.H. 314, 318–19, 269 A.2d 634, 637–38 (1970).

Accordingly, we answer the certified questions as follows:

1. New Hampshire recognizes a cause of action for a negligently performed sterilization that results in the birth of a normal healthy baby.

2. The elements of damages that may be recovered are those that are a direct and probable result of the defendants' negligence, except that recovery for the costs of raising the child are not permitted.

3. The husband may recover for his loss of consortium.

4. Our answer to the second question renders the answer to this question unnecessary.

*Remanded.*

All concurred.