667 P.2d 1294

UNIVERSITY OF ARIZONA HEALTH SCIENCES CENTER, a/k/a University Hospital, et al., Petitioners,

v.

SUPERIOR COURT OF the STATE of Arizona, In and For the COUNTY OF MARICOPA, and David L. Grounds, a Judge thereof; and Patrick Heimann and Jeanne Heimann, husband and wife, Respondents.

No. 16336–SA.

Supreme Court of Arizona, En Banc.

July 20, 1983.

Jones, Teilborg, Sanders, Haga & Parks by Frank A. Parks, Donald L. Myles, Jr., Phoenix, for petitioners University of Arizona Health Sciences Center.

Bob O. Barber, Jr., Tucson, for respondents Heimann.

Haralson, Kinerk & Morey by Carter Morey and Wallace R. Hoggatt, Tucson, for amici curiae Frank and Victoria Mendoza.

FELDMAN, Justice.

Petitioner, a health care provider which operates a teaching hospital, brings this special action, claiming that the respondent judge erred in a legal ruling on petitioner's motion for summary judgment in the un-

derlying tort action. Petitioner seeks this court's intervention by way of an order requiring respondent judge to apply the correct rule of law and to grant the motion for partial summary judgment. We have jurisdiction to entertain the action by virtue of Ariz. Const. art. 6, § 5(1), and Ariz.R.Sp. Act. 4, 17A A.R.S.

The real parties in interest are Patrick Heimann and Jeanne Heimann, husband and wife (Heimanns). The Heimanns originally brought a medical malpractice action against petitioner, a health care provider. The Heimanns claimed that one of the hospital's employees, a doctor, had negligently performed a vasectomy operation upon Patrick Heimann, that as a result Jeanne Heimann became pregnant and on October 4, 1981 gave birth to a baby girl. The Heimanns alleged in the underlying tort action that the vasectomy had been obtained because "already having three children, [they] decided . . . that they desired to have no more children. As a result of this decision they further decided that a vasectomy was the best means of contraception for them." The baby girl is normal and healthy, but the Heimanns argue that they are financially unable to provide for themselves, their other three children and the newest child whose birth was neither planned nor desired. Accordingly, they seek damages from the doctor and his employer.

The question of negligence is not before us. The issue which brings these parties to our court pertains, rather, to the nature and extent of the damages which can be recovered, assuming that negligence is subsequently proved. The hospital filed a motion for partial summary judgment (Ariz.R. Civ.P. 56(b), 16 A.R.S.), contending that while damages were recoverable for "wrongful pregnancy," "as a matter of law [the Heimanns] could not recover damages

for the future cost of raising and educating their normal, healthy child born as the result of petitioner's negligence." The trial judge denied the motion for partial summary judgment. Petitioner then brought this special action, claiming that the ruling of the trial judge was improper and should be vacated by this court.

■ All parties have urged us to accept jurisdiction to decide the narrow, legal question presented in the present posture of the case. The question is a matter of first impression in this state, is appropriately framed, turns entirely on legal principles rather than controverted issues of fact, and is a matter of important public interest. While there is a substantial argument to be made over the adequacy of review by appeal (see Ariz.R.Sp.Act. 1), the factors mentioned above and the resulting cost and delay to all parties if normal appellate procedures were utilized and the case then had to be retried militate in favor of exercising our discretion to accept jurisdiction. See State v. Superior Court of Maricopa County, 123 Ariz. 324, 329–30, 599 P.2d 777, 782–83 (1979). We therefore felt that it would be appropriate to accept jurisdiction in order to decide the legal issue and to determine whether in failing to grant the motion for partial summary judgment the respondent judge failed "to perform a duty required by law as to which he has no discretion" or acted "in excess of [his] . . . legal authority. . . ." Ariz.R.Sp.Act. 3(a) and (b); see Nataros v. Superior Court of Maricopa County, 113 Ariz. 498, 499, 557 P.2d 1055, 1056 (1976).

Therefore, we shall proceed to consider the legal questions pertaining to the nature and extent of damages which may be recovered in an action for "wrongful pregnancy."[1] The first question is whether parents of a child who was neither desired nor planned for but who was, fortunately, nor-

---

1. Although this action is brought under common law negligence principles, the term "wrongful pregnancy" is generally used to describe an action brought by the parents of a healthy, but unplanned, child against a physician who negligently performed a sterilization or abortion. See Phillips v. United States, 508

F.Supp. 544, 545 n. 1 (D.S.C.1980). This action is distinguished from a "wrongful birth" claim brought by the parents of a child born with birth defects, or a "wrongful life" claim brought by the child suffering from such birth defects. See Turpin v. Sortini, 31 Cal.3d 220, 643 P.2d 954, 182 Cal.Rptr. 337 (1982).

mal and healthy, have been damaged at all by the birth of that child. An overview of the authorities indicates rather clearly that the law will recognize at least some types of damage which result from unwanted procreation caused by the negligence of another. *See* annot., *Tort Liability for Wrongfully Causing One to Be Born,* 83 A.L.R.3d 15, 29 (1978); *Phillips v. United States,* 508 F.Supp. 544, 549 (D.S.C.1980). The real controversy centers around the nature of the damages which may be recovered. On this issue there are three distinct views.

The first line of authority limits damages by holding that the parents may recover only those damages which occur as the result of pregnancy and birth, and may not recover the cost of rearing the child. *Boone v. Mullendore,* 416 So.2d 718, 721 (Ala.1982); *Wilbur v. Kerr,* 275 Ark. 239, 243–44, 628 S.W.2d 568, 571 (1982); *Coleman v. Garrison,* 327 A.2d 757, 761–62 (Del.Super.Ct. 1974), *aff'd* 349 A.2d 8, 13–14 (Del.1975); *Cockrum v. Baumgartner,* 95 Ill.2d 193, 203–04, 69 Ill.Dec. 168, 173–74, 447 N.E.2d 385, 390–91 (1983) (reversing 99 Ill.App.3d 271, 54 Ill.Dec. 751, 425 N.E.2d 968 (1981)); *Schork v. Huber,* 648 S.W.2d 861, 862 (Ky. 1983); *Sala v. Tomlinson,* 73 A.D.2d 724, 726, 422 N.Y.S.2d 506, 509 (1979); *Mason v. Western Pennsylvania Hospital,* 499 Pa. 484, 453 A.2d 974, 975–76 (1982).

A second view could be characterized as the "full damage" rule and allows the parents to recover all damages and expenses, including the cost of the unsuccessful sterilization procedure, the economic loss from pregnancy, and the economic, physical and emotional cost attendant to birth and rearing the child. *Custodio v. Bauer,* 251 Cal. App.2d 303, 325, 59 Cal.Rptr. 463, 477 (1967); *Cockrum v. Baumgartner,* 99 Ill. App.3d 271, 273–74, 54 Ill.Dec. 751, 753, 425 N.E.2d 968, 970 (1981), *rev'd* 95 Ill.2d 193, 69 Ill.Dec. 168, 447 N.E.2d 385 (1983). These cases appear to be a distinct minority.

A substantial number of cases have adopted a third rule which allows the recovery of all damages which flow from the wrongful act but requires consideration of the offset of benefits. *See* Restatement (Second) of Torts § 920 (1977).[2] Under this view, the trier of fact is permitted to determine and award all past and future expenses and damages incurred by the parent, including the cost of rearing the child, but is also instructed that it should make a deduction for the benefits that the parents will receive by virtue of having a normal, healthy child. *Stills v. Gratton,* 55 Cal. App.3d 698, 708–09, 127 Cal.Rptr. 652, 658–59 (1976); *Ochs v. Borelli,* 187 Conn. 253, 259–60, 445 A.2d 883, 886 (1982); *Troppi v. Scarf,* 31 Mich.App. 240, 255, 187 N.W.2d 511, 519 (1971); *Sherlock v. Stillwater Clinic,* 260 N.W.2d 169, 175–76 (Minn.1977).

The hospital claims that the trial court was bound by law to adopt the first view, that the cost of rearing and educating the child are not compensable elements of damage. The Heimanns claim, on the other hand, that the proper rule is the second view, which permits the recovery of all damage and does not permit the jury to consider and offset benefits. We disagree with both positions.

■ We consider first the strict rule urged by the hospital. Various reasons are given by the courts which adopt the view that damages for rearing and educating the child cannot be recovered. Some cases base their decision on the speculative nature of the necessity to assess "such matters as the emotional affect of a birth on siblings as well as parents, and the emotional as well as pecuniary costs of raising an unplanned and, perhaps, an unwanted child in varying family environments." *Coleman v. Garrison,* 327 A.2d at 761. We think, however, that juries in tort cases are often required to assess just such intangible factors, both emotional and pecuniary, and see no reason why a new rule should be adopted for

---

2. Restatement (Second) of Torts § 920 states: When the defendant's tortious conduct has caused harm to the plaintiff or to his property and in so doing has conferred a special benefit to the interest of the plaintiff that was harmed, the value of the benefit conferred is considered in mitigation of damages, to the extent that this is equitable.

wrongful pregnancy cases. Another reason given for the strict view is the argument that the benefits which the parents will receive from having a normal, healthy child outweigh any loss which the parents might incur in rearing and educating that child. *Terrell v. Garcia,* 496 S.W.2d 124, 128 (Tex. Civ.App.1973). No doubt this is true in many cases, but we think it unrealistic to assume that it is true in all cases. We can envision many situations in which for either financial or emotional reasons, or both, the parents are simply unable to handle another child and where it would be obvious that from either an economic or emotional perspective—or both—substantial damage has occurred.

A third basis for the strict rule is the argument that the "injury is out of proportion to the culpability of the [wrongdoer]; and that the allowance of recovery would place too unreasonable a burden upon the [wrongdoer], since it would likely open the way for fraudulent claims . . . ." *Beardsley v. Wierdsma,* 650 P.2d 288, 292 (Wyo. 1982). This, of course, is the hue and cry in many tort cases and in essence is no more than the fear that some cases will be decided badly. Undoubtedly, the system will not decide each case correctly in this field, just as it does not in any field, but here, as in other areas of tort law, we think it better to adopt a rule which will enable courts to strive for justice in all cases rather than to rely upon one which will ensure injustice in many. *Brannigan v. Raybuck,* 136 Ariz. 513, 519, 667 P.2d 213, 219 (1983).

The final basis for the strict rule is the one which gives this court greater pause than any of the others. It is well put by the Illinois Supreme Court in *Cockrum v. Baumgartner, supra.* The court used the following words to justify the denial of recovery of damages for the rearing and educating of the unplanned child:

"There is no purpose to restating here the panoply of reasons which have been assigned by the courts which follow the majority rule. * * * In our view, however, its basic soundness lies in the simple proposition that a parent cannot be said to have been damaged by the birth and rearing of a normal, healthy child . . . . [I]t is a matter of universally-shared emotion and sentiment that the intangible but all important, incalculable but invaluable 'benefits' of parenthood far outweigh any of the mere monetary burdens involved. Speaking legally, this may be deemed conclusively presumed by the fact that a prospective parent does not abort or subsequently place the "unwanted" child for adoption. On a more practical level, the validity of the principle may be tested simply by asking any parent the purchase price for that particular youngster. Since this is the rule of experience, it should be, and we therefore hold that it is, the appropriate rule of law."

. . . .

We consider that on the grounds described, the holding of a majority of jurisdictions that the costs of rearing a normal and healthy child cannot be recovered as damages to the parents is to be preferred. One can, of course, in mechanical logic reach a different conclusion, but only on the ground that human life and the state of parenthood are compensable losses. In a proper hierarchy of values, the benefit of life should not be outweighed by the expense of supporting it. Respect for life and the rights proceeding from it are the heart of our legal system and, broader still, our civilization.

*Id.* 95 Ill.2d at 198–201, 69 Ill.Dec. at 171–72, 447 N.E.2d at 388–89 (quoting *Public Health Trust v. Brown,* 388 So.2d 1084, 1085–86 (Fla.App.1980)).

These sentiments evoke a response from this court. In most cases we could join in the "universally shared emotion and sentiment" expressed by the majority of the Illinois court, but we do not believe we hold office to impose our views of morality by deciding cases on the basis of personal emotion and sentiment, though we realize we cannot and should not escape the effect of human characteristics shared by all mankind. However, we believe our function is

to leave the emotion and sentiment to others and attempt to examine the problem with logic and by application of the relevant principles of law. In this case, we believe that the strict rule is based upon an emotional premise and ignores logical considerations. While we recognize that in most cases a family can and will adjust to the birth of the child, even though they had not desired to have it, we must recognize also that there are cases where the birth of an unplanned child can cause serious emotional or economic problems to the parents.[3] We therefore reject the hospital's claim that the cost of rearing and educating the child can never be compensable elements of damage.

We consider next the "full damage" rule urged by the Heimanns and adopted by the Illinois Court of Appeals in *Cockrum v. Baumgartner* and the California court in *Custodio v. Bauer*. The courts applying this rule have relied on traditional tort principles and determined that the cost of rearing the child is a foreseeable consequence of the physician's negligence and therefore compensable. *Cockrum v. Baumgartner*, 99 Ill.App.3d at 272–73, 54 Ill.Dec. at 752, 425 N.E.2d at 969. We agree that these damages are compensable; however, we believe that a rule which does not allow for an offset for the benefits of the parent-child relationship prevents the trier of fact from considering the basic values inherent in the relationship and the dignity and sanctity of human life. We believe that these "senti-

ments," if they may be called such, are proper considerations for the fact finder in tort cases, whether they be used to mitigate or enhance damages. No doubt ascertaining and assigning a monetary value to such intangibles will be a difficult task, but we do not believe it more difficult than the task of ascertaining the pecuniary and non-pecuniary damages that the parents will experience after the birth of the child. Therefore, we agree with the Illinois Supreme Court (*Cockrum v. Baumgartner, supra*) that the "full damage" approach is an exercise in mechanical logic and we reject it.

■ In our view, the preferable rule is that followed by the courts which, although permitting the trier of fact to consider both pecuniary and non-pecuniary elements of damage which pertain to the rearing and education of the child, also require it to consider the question of offsetting the pecuniary and non-pecuniary benefits which the parents will receive from the parental relationship with the child.[4] Some may fear that adoption of such a rule will permit juries to recognize elements of damage which, because of our private philosophy or views of ethics, we, as judges, believe should not be recognized. We feel, however, that the consensus of a cross-section of the community on such important issues is better and more accurately obtained from the verdict of a jury than from the decision of any particular group of that community. A

---

3. The examples which may be cited are as various as human experience can provide. Suppose, for instance, a husband learns that he is suffering from cancer and that his prognosis is uncertain. He and his wife already have four children and decide that in view of his medical situation it is unwise to run the risk that the wife become pregnant again. He arranges for a vasectomy, which is negligently performed. Suppose further that the child which results is born shortly before or after the husband's death from cancer. Can one say as a matter of law that the benefits of having a normal child outweigh the financial and emotional obligations which the struggling mother must undertake? We think not.

4. The application of the benefit rule has been criticized by some courts which argue that § 920 applies only when the injury and benefit

are to the same interest. *See* Restatement, *supra*, § 920, comments a and b. These courts argue that the emotional benefits of child rearing in no way offset the economic costs. *Cockrum v. Baumgartner*, 99 Ill.App.3d at 274, 54 Ill.Dec. at 753, 425 N.E.2d at 970. We are not persuaded by this argument since we agree with the special concurrence of Justice Faulkner in *Boone v. Mullendore, supra,* that "the economic burden and emotional distress of rearing an unexpected child are inextricably related to each other ...." *Id.* at 726. We also note that the benefit rule is based on the concept of unjust enrichment and agree with Justice Faulkner that strict interpretation of the same interest limitation would result in unjust enrichment in wrongful pregnancy cases. *Id.*

jury verdict based on knowledge of all relevant circumstances is a better reflection of whether real damage exists in each case than can be obtained from use of any abstract, iron-clad rule which some courts would adopt and apply regardless of the circumstances of the particular case.

■ There may be those who fear that the rule which we adopt will permit the award of damages where no real injury exists. We feel this danger is minimized by giving weight and consideration in each case to the plaintiffs' reasons for submitting to sterilization procedures. Such evidence is perhaps the most relevant information on the question of whether the subsequent birth of a child actually constitutes damage to the parents. *Hartke v. McKelway,* 707 F.2d 1544 (D.C.Cir.1983). The parents' *preconception* calculation of the reasons for preventing procreation is untainted by bitterness, greed or sense of duty to the child and is perhaps the most telling evidence of whether or to what extent the birth of the child actually injured the parents. *Id.* For example, where the parent sought sterilization in order to avoid the danger of genetic defect, the jury could easily find that the uneventful birth of a healthy, non-defective child was a blessing rather than a "damage." Such evidence should be admissible, and the rule which we adopt will allow the jury to learn all the factors relevant to the determination of whether there has been any real damage and, if so, how much. We are confident that the inherent good sense of the jury is the best safeguard to "runaway" verdicts and unfounded speculation in the award of damages, provided that the jury is allowed to consider the issues in realistic terms.

It may be argued also that the rule which we adopt will have the unhappy effect of creating situations in which parents will testify to their feeling or opinion that the child is "not worth" the burden of having and rearing. Such testimony could be harmful if or when the child learns of it. "We are not convinced that the effect on the child will be significantly detrimental in every case, or even in most cases; ... we think the parents, not the courts, are the ones who must weigh the risk." *Hartke v. McKelway,* at 1552 n. 8; *accord Sherlock v. Stillwater Clinic,* 260 N.W.2d 176–77.

■ We agree, therefore, with the special concurrence of Chief Justice Rose of the Wyoming Supreme Court:

[T]hrough application of the "benefit rule" the courts give recognition to the philosophy that the costs and benefits associated with the introduction of an unplanned child to the family will vary depending upon the circumstances of the parents. As was stated in *Troppi v. Scarf, supra,* 187 N.W.2d at 519:

"The essential point, of course, is that the trier must have the power to evaluate the benefit according to all the circumstances of the case presented. Family size, family income, age of the parents, and marital status are some, but not all, the factors which the trier must consider in determining the extent to which the birth of a particular child represents a benefit to his parents. That the benefits so conferred and calculated will vary widely from case to case is inevitable."

By recognizing these considerations, the "benefit rule" encourages and entrusts the trier of fact with the responsibility of weighing and considering all of the factors associated with the birth of the unplanned child in a' given "wrongful pregnancy" case. For me, it is the soundest approach for dealing with the right of the parents to prove their damages caused by the unplanned birth of a child without, at the same time, uprooting the law of tort damages.

*Beardsley v. Wierdsma,* 650 P.2d at 296–97.

■ In reaching our decision, we are influenced greatly by what we perceive to be the uniform rules of damages for all tort cases. One of the basic principles of damage law is the concept that a wrongdoer may be held liable for all damages which he may have caused and all costs which the victim may sustain as a result of the wrong. *Sherlock v. Stillwater Clinic,* 260 N.W.2d at 174; *Cockrum v. Baumgartner,* 95 Ill.2d at

206–07, 69 Ill.Dec. at 175, 447 N.E.2d at 392 (Clark, J., dissenting). We have recognized before in Arizona that the right to damages must be established without speculation, but that uncertainty as to the amount of those damages will not preclude recovery and is a question for the jury. *Compare Coury Bros. Ranches, Inc. v. Ellsworth,* 103 Ariz. 515, 446 P.2d 458 (1968), *with Nelson v. Cail,* 120 Ariz. 64, 583 P.2d 1384 (App. 1978).

 We see no reason why ordinary damage rules, applicable to all other tort cases, should not be applicable to this situation.[5] By allowing the jury to consider the future costs, both pecuniary and non-pecuniary, of rearing and educating the child, we permit it to consider all the elements of damage on which the parents may present evidence. By permitting the jury to consider the reason for the procedure and to assess and offset the pecuniary and non-pecuniary benefits which will inure to the parents by reason of their relationship to the child, we allow the jury to discount those damages, thus reducing speculation and permitting the verdict to be based upon the facts as they actually exist in each of the unforeseeable variety of situations which may come before the court. We think this by far the better rule. The blindfold on the figure of justice is a shield from partiality, not from reality.

Accordingly, we hold that the respondent trial judge did not err in his ruling on the motion for summary judgment. The prayer for relief is denied.

HOLOHAN, C.J., and HAYS, J., concur.

GORDON, Vice Chief Justice (concurring in part and dissenting in part):

I would agree with the majority that health care providers should be responsible in damages for costs attendant to birth when they negligently perform a surgical sterilization. I would allow damages for obstetrical care, pre and post partum; all costs of lying in; where appropriate, loss of wages by the mother up to delivery and a short period thereafter, and her pain and suffering caused by delivery. Also if this were a case where the child were born seriously retarded, deformed, or chronically ill, I too would hold the health care provider responsible for the cost of lifetime support and care for the child. But here we are dealing with the birth of a normal and healthy, although undesired, child whose life I consider above monetary value. At this point I must respectfully dissent.

One of the most important functions of a state's highest appellate court is to guide and shepherd the growth of the common law of that state according to the Court's perception of existing public policy. This task is at once delicate and awesome. Emotion and sentimentality indeed should not play a part in our Court's decision of whether to apply an existing principle of law to a given set of facts. Were it otherwise the doctrine of stare decisis would be a fraud. But when, as members of this Court, we are called upon to extend an existing rule of damages to an entirely new concept within our jurisprudence, especially one so fraught with subjective differences in values, opinion and personal belief, we should tread cautiously, led by our most trusted senses, with both the goals of justice and the

---

5. In holding that ordinary damages rules are to be applied, we do not indicate or imply that parents should be forced to mitigate damages by choosing abortion or adoption, or that the parents' failure to do so may be considered as an offset. The rules requiring mitigation of damages require only that reasonable measures be taken. *Troppi v. Scarf,* 31 Mich.App. at 258, 187 N.W.2d at 519; *see also, Fairway Builders, Inc. v. Malouf Towers Rental Co.,* 124 Ariz. 242, 255, 603 P.2d 513, 526 (App.1979). The decision not to conceive a child is quite differ-

ent from the decision to abort or put the child up for adoption once it has been conceived. "If parents are confronted in such a situation with choices which they consider to be unenviable alternatives, they should not be precluded from recovering damages because they select the most desirable of these unpalatable choices." *Cockrum v. Baumgartner,* 95 Ill.2d at 207, 69 Ill.Dec. at 175, 447 N.E.2d at 392 (Clark, J., dissenting); *see also* Kelly, *Wrongful Life, Wrongful Birth and Justice in Tort Law,* Wash. U.L.Q. 919, 949–50 (1979).

strengths and weaknesses of our system equally in mind.

The rule of damages established by the majority in this case may indeed be logical and legally scientific. Logic and science may, however, lead to results at variance with public policy. Although I have a very high degree of respect for our country's system of civil justice, and readily admit that our common law concepts of tort liability have caused products manufactured in the United States to be among the safest in the world, I feel that there are some human misfortunes that do not lend themselves to solution by combat in the courtroom. Wrongful pregnancy, in my opinion, is one of those. I believe the rule allowing damage recovery beyond the costs of birth in cases such as these would violate what I consider the public policy of our state in several ways.

(1) As is pointed out in the majority opinion, the prosecution of this type of action requires parents to deny the worth of the child, thus placing the values of the parents over those of the child. Under the "benefits rule," a judgment for the parents is a conclusion by the court that a child is not worth what it takes to raise him or her. This problem has been recognized by several authors who refer to such a child as an "emotional bastard" when attempting to describe the stigma that will attach to the child when he learns the true circumstances of his upbringing. *Boone v. Mullendore,* 416 So.2d 718 (Ala.1982); *Wilbur v. Kerr,* 275 Ark. 239, 628 S.W.2d 568 (1982); Note, *Wrongful Birth: A Child of Tort Comes of Age,* 50 U.Cin.L.Rev. 65 (1981). In attempting to minimize the effect of a wrongful pregnancy action on the child, some courts have addressed part of their opinion to the child:

"Since the child involved might some day read this decision as to who is to pay for his support and upbringing, we add that we do not understand this complaint as implying any present rejection or future strain upon the parent-child relationship. Rather we see it as an endeavor on the part of clients and counsel to determine the outer limits of physician liability for failure to diagnose the fact of pregnancy. This case and this complaint are well beyond such limits."

*Rieck v. Medical Protective Co. of Fort Wayne, Ind.,* 64 Wis.2d 514, 520, 219 N.W.2d 242, 245–46 (1974). *See also Coleman v. Garrison,* 349 A.2d 8 (Del.1975) (advising the child that the case was not founded on rejection of him as a person, but rather was a malpractice action "sounding for the outlimits of physician liability." *Id.* at 14). One court has gone so far as to guarantee the parents' anonymity by captioning the case *Anonymous v. Hospital,* 33 Conn.Sup. 126, 366 A.2d 204 (1976). The above authorities indicate the practical effect that such litigation may have on the child in future years. Although later discovery of their parents' feelings toward them may harm only a few children, I think a few are too many.

(2) The decision in this matter will likely impinge upon the availability and costs of sterilization surgery in Arizona. It is conceivable that hereafter many health care providers will either refuse to perform these procedures, or they will become so expensive that only the wealthy will be able to afford them. If the intended result of the majority is to lessen the number of unwanted pregnancies by requiring more skill and caution in the performance of sterilization procedures, I believe that this case will be self-defeating. There will probably be an increase in the number of unwanted pregnancies due to the increased cost and relative unavailability of surgical sterilization.

(3) Finally, it is well known that our courts are already overcrowded with cases. The majority has by this decision created a new and expansive concept which will generate new and protracted litigation. For example, in *Cox v. Stretton,* 77 Misc.2d 155, 352 N.Y.S.2d 834 (1974), the plaintiff became pregnant and bore a child after her husband had received a vasectomy and was told by the defendant that the procedure would result in sterility. Aside from alleging causes of action in negligence and

breach of contract, the complaint also set forth a cause of action on behalf of the plaintiffs' infant children. The court summarized the cause of action as follows:

"[On behalf of the infant children, the plaintiffs' allege] that they, as prior born children, by reason of the defendant's negligence and breach of contract, will be deprived in the future of a portion of the care, affection, training and financial support that each would have received, except for the birth of their unexpected brother."

*Id.* at 158–59, 352 N.Y.S.2d at 839. Although the court refused to recognize this cause of action, the case indicates the scope of actions that may potentially be brought in the aftermath of the decision handed down by this Court today. Such actions are particularly tempting both to the unscrupulous and the unethical which will further add to the court's burden.

A further non-policy criticism that I have of the majority opinion is that it is not entirely consistent. If the Court is to allow some of the logical principles of tort law to apply in this very sensitive area, then I feel that all of them should apply. The majority, however, fails to do so in at least two instances.[1] First, in the usual lawsuit if a plaintiff has failed to mitigate his or her damages, this fact is allowed as an offset against recovery. In this case the Court, although eschewing emotions and sentiment, has for reasons unexplained decided that the parents' failure to choose abortion or adoption should not be considered in mitigation. The majority has apparently decided that these methods of mitigating damages are unreasonable as a matter of law. The question of the reasonableness of a method of mitigating damages, however, is generally a question of fact to be decided by the trier of fact. In some cases abortion or adoption will not be reasonable, while in others it will be reasonable. If we are

going to open the door, logically, we should open it all the way. If the plaintiff parents—who have endeavored not to have a child, pleaded his or her birth as an injury to them, and claimed substantial damages—chose not to take advantage of abortion or adoption, the defendant should be permitted to establish that by so doing the parents unreasonably failed to mitigate their damages. Note, *Wrongful Birth Damages: Mandate and Mishandling by Judicial Fiat,* 13 Val.U.L.Rev. 127, 164–170 (1978) [hereinafter cited as *Wrongful Birth Damages*]; Note, *Judicial Limitations on Damages Recoverable for the Wrongful Birth of a Healthy Infant,* 68 Va.L.Rev. 1311, 1328 (1982) [hereinafter cited as *Limitations on Damages*]; *cf. Ziemba v. Sternberg,* 45 A.D.2d 230, 357 N.Y.S.2d 265 (1974) (question of whether option of abortion was appropriate cannot be decided on motion to dismiss).

Second, the majority misapplies Restatement (Second) of Torts § 920 (1977). Section 920 specifically states that for a benefit to be considered in mitigation of damages it must be "a special benefit to the interest of the plaintiff that was harmed * * *." Furthermore, a comment to § 920 explains how the "same interest" requirement operates:

"**Limitation to same interest.** Damages resulting from an invasion of one interest are not diminished by showing that another interest has been benefited. Thus one who has harmed another's reputation by defamatory statements cannot show in mitigation of damages that the other has been financially benefited from their publication * * * unless damages are claimed for harm to pecuniary interests. * * * Damages for pain and suffering are not diminished by showing that the earning capacity of the plaintiff has been increased by the defendant's act. * * Damages to a husband for loss of consortium are not diminished by the fact that

---

1. I point these inconsistencies out not because I believe the majority opinion should remedy them. Indeed, the rule adopted by the majority but purged of these inconsistencies would be even less desirable as a matter of policy. I point them out in an attempt to demonstrate

that the majority's attempt to avoid the moral and policy problems associated with this area of the law by appealing to strict principles of tort law is flawed. I am convinced that any such attempt would be flawed.

the husband is no longer under the expense of supporting the wife."

Restatement, *supra*, § 920 comment b. A proper application of the "same interest" requirement in a wrongful pregnancy case would require that pecuniary harm of raising the child be offset only by corresponding pecuniary benefit, and emotional benefits of the parent-child relationship be applied as an offset only to corresponding emotional harm. *Custodio v. Bauer*, 251 Cal.App.2d 303, 59 Cal.Rptr. 463 (1967); Comment, *Robak v. United States: A Precedent-Setting Damage Formula For Wrongful Birth*, 58 Chi.[-]Kent L.Rev. 725, 746–47 (1982); Kashi, *The Case of the Unwanted Blessing: Wrongful Life*, 31 U.Miami L.Rev. 1409, 1416–17 (1977); *Wrongful Birth Damages, supra*, at 158; *Limitations on Damages, supra*, at 1326.

The majority's reasons for overlooking the "same interest" requirement of § 920 are unpersuasive. The majority argues that the economic burden and emotional distress of rearing an unexpected child are so closely related that they cannot be separated. This seems inconsistent with the majority's expressed confidence in the ability of jurors to assess intangible emotional and pecuniary factors.

The majority also argues that because the "benefits rule" of § 920 is designed to prevent unjust enrichment, the "same interest" requirement of the rule should not be applied. The same argument could be made in any case and amounts to little more than an argument for deleting the "same interest" requirement from the "benefits rule."

I am convinced that the proper balance between strict tort law principles and sound public policy would be struck by precluding recovery of the future costs of raising and educating the child.

CAMERON, J., concur.