790 P.2d 735

**Christy WALKER, a minor, by Laura Walker PIZANO, her mother, next friend and natural guardian; Laura Walker Pizano, individually, and Robert Pizano, individually, Plaintiffs,**

**v.**

**Buddy MART and Dwight Wensel, Defendants.**

**No. CV–89–0065–CQ.**

Supreme Court of Arizona, En Banc.

April 12, 1990.

Reconsideration Denied May 24, 1990.

**38**

Law Offices of Robert Q. Hoyt by Robert Q. Hoyt and Gerald T. Barton, Tucson, for plaintiffs.

Chandler, Tullar, Udall & Redhair by D. Burr Udall, Tucson, for defendants.

Snell & Wilmer, by Barry D. Halpern, Phoenix, for amicus curiae Arizona Medical Ass'n.

Lewis and Roca by John P. Frank, Roger W. Kaufman, Beth J. Schermer and Kelly J. McDonald, Phoenix, for amicus curiae Mut. Ins. Co. of Arizona.

## OPINION

FELDMAN, Vice Chief Justice.

This case requires us to determine whether Arizona recognizes a cause of action for "wrongful life." The question was certified to us by the Chief Judge of the United States District Court for the District of Arizona. *See* Rule 27(a), Ariz.R. Sup.Ct., 17A A.R.S. Because it raises an important issue of first impression in this state, we accepted jurisdiction. *See* Rule 27(b), Ariz.R.Sup.Ct., 17A A.R.S. We have jurisdiction pursuant to A.R.S. § 12–1861 and Ariz. Const. art. 6, § 5(6). We exercise our discretion in accordance with the principles set forth in *Torres v. Goodyear Tire & Rubber Co., Inc.*, 163 Ariz. 88, 90, 786 P.2d 939, 941 (1990).

## FACTS AND PROCEDURAL HISTORY

The facts are set forth in the certification order and are assumed for purposes of this proceeding. Laura Walker (Laura) sought obstetrical care from Dr. Dwight Wensel, an osteopathic physician, and his licensed physician's assistant, Buddy Mart (defendants). Defendants negligently failed to perform adequate laboratory tests to detect that Laura had contracted rubella, commonly known as German measles, during the first trimester of her pregnancy. Thus, they failed to inform Laura of the resulting significant risk to the fetus.

If Laura had been informed that she had contracted German measles and of the attendant fetal risks, she would have aborted the fetus. In fact, on October 29, 1980, Laura gave birth to Christy Walker

(Christy). Tragically, Christy was born with rubella syndrome, marked in her case by severe birth defects including cerebral palsy, deafness, and cardiac abnormalities.

Laura sued defendants in district court asserting her own claim for "wrongful birth" and a claim for "wrongful life" on Christy's behalf.[1] She sought special and general damages for both claims.

The gist of both claims is that defendants wrongfully deprived Laura of relevant information pertaining to the fetal risk, thereby preventing her from invoking her legal right to terminate the pregnancy. Christy alleges she was damaged by defendants' negligence because Laura, ignorant of the fetal risk, allowed the pregnancy to go to term. As a result, Christy was born and must now live in an impaired condition.

## DISCUSSION

### A. "Prenatal Torts"

Scientific advances now make it possible to control conception, to discover fetal injury, and to detect genetically transmitted disease or defect prior to and after conception. A woman may choose to terminate a pregnancy by abortion when there is fear that the fetus will be born with significant defects or injuries. *See Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). As a consequence, since the *Roe* decision, courts have been presented with a variety of actions brought by parents and infants against physicians and others whose acts or omissions allegedly resulted in the birth of an unwanted child.

Confusion often arises as to the proper denomination of these prenatal torts. Because this area of the law is new and fraught with emotion, both courts and commentators have often blurred the legal and theoretical distinctions among the actions. Believing those distinctions are vitally important to both theory and outcome, we commence with definitions of the terms generally used.

The cases fall into three general categories. The first is termed "wrongful conception or pregnancy." In such actions, parents of a normal but unplanned child seek damages either from a physician who allegedly was negligent in performing a sterilization procedure or abortion, or from a pharmacist or pharmaceutical manufacturer who allegedly was negligent in dispensing or manufacturing a contraceptive prescription or device.[2] Arizona recognized a wrongful pregnancy cause of action when parents sought damages upon the birth of their healthy, normal child after a failed vasectomy. *See University of Arizona Health Sciences Center v. Superior Court*, 136 Ariz. 579, 667 P.2d 1294 (1983).

The second category may be labeled "wrongful birth." In such cases, the parents of a child born with birth defects allege that the negligence of those charged with prenatal testing or genetic counseling deprived them of the right to make a timely decision regarding whether to terminate a planned pregnancy because of the likelihood that their child would be born physically or mentally impaired.[3]

The third category of cases, known as "wrongful life," is brought by or on behalf of the children themselves. One variety of these actions involves claims of normal but unwanted children who seek damages either from parents, doctors, or institutions negligently responsible for their conception or birth. The action may

---

1. We refer to Laura as the party plaintiff for the wrongful birth action and Christy for the wrongful life claim.

2. *See* Annotation, *Medical Malpractice, and Measure and Element of Damages, in Connection with Sterilization or Birth Control Procedures,* 27 A.L.R.3d 906 (1969).

3. Since *Roe,* an overwhelming majority of jurisdictions has recognized wrongful birth claims. *See Lininger v. Eisenbaum,* 764 P.2d 1202, 1208 n. 9 (Colo.1988) (citing numerous cases in which the cause of action has been recognized); *see also* Note, *Father and Mother Know Best: Defining the Liability of Physicians for Inadequate Genetic Counseling,* 87 YALE L.J. 1488 (1978) (discussing the issue and concluding that imposing liability on physicians vindicates societal interest in reducing the incidence of birth defects; *but see Azzolino v. Dingfelder,* 315 N.C. 103, 337 S.E.2d 528 (1985) (denying wrongful birth claim), *cert. denied,* 479 U.S. 835, 107 S.Ct. 131, 93 L.Ed.2d 75 (1986).

be brought by children born as a result of a failure of a contraceptive method[4] or by illegitimate children who allege they are impaired by their status or lack of resources to sustain themselves.[5] Another type of wrongful life claim, like the one before us, is brought by impaired children. Usually, the children allege that because of defendants' negligence, their parents either decided to conceive them ignorant of the risk of impairment or were deprived of information that would have impelled them to terminate the pregnancy.

### B. The Issue Refined

In *University of Arizona* we held that the parents of a healthy child may recover damages from a physician who negligently failed to prevent conception. 136 Ariz. at 586, 667 P.2d at 1301. Two justices dissented, arguing that because the child was healthy, damages should be limited to costs of birth. *Id.* at 587, 667 P.2d at 1302 (Gordon, V.C.J., concurring in part, dissenting in part). The dissenting members of the court agreed, however, that "if this were a case where the child were born seriously retarded, deformed, or chronically ill, [they] too would hold the health care provider responsible [to the parents] for the cost of lifetime support and care for the child." *Id.* at 586, 667 P.2d at 1301. Given Christy's condition, therefore, we acknowledge at the outset that we have already concluded that if parents establish that a physician's negligence prevented them from exercising their right of choice to terminate the pregnancy, they may bring a wrongful birth claim to recover damages in accordance with the principles established in *University of Arizona.*

The question certified, therefore, is narrowly framed and relates only to a *child's* action for wrongful life. We thus focus only on the issue as Chief Judge Bilby phrased it in the certification order:

> Does a child born under the circumstances set forth [above] have a cause of action in tort for "wrongful life"?

### C. The Present State of the Law

At least twenty states have now considered wrongful life claims. In three, the state's highest courts have recognized the action, allowing limited recovery. *See Turpin v. Sortini,* 31 Cal.3d 220, 182 Cal.Rptr. 337, 643 P.2d 954 (1982); *Procanik v. Cillo,* 97 N.J. 339, 478 A.2d 755 (1984); *Harbeson v. Parke–Davis, Inc.,* 98 Wash.2d 460, 656 P.2d 483 (1983). Courts in the other states have refused to recognize the action for a variety of reasons. *See* Annotation, *Tort Liability for Wrongfully Causing One to be Born,* 83 A.L.R.3d 15, §§ 3, 13–16 (1978 & Supp.1989); *see also* Trotzig, *The Defective Child and the Actions for Wrongful Life and Wrongful Birth,* 14 FAM.L.Q. 15 (1980). As in other situations, we choose between the minority and majority positions on the basis of logic and justice, rather than the weight of numbers.

Most courts that have considered the issue agree that, irrespective of labels, a plaintiff's claim of wrongful life sounds in negligence. *See, e.g., Becker v. Schwartz,* 46 N.Y.2d 401, 413 N.Y.S.2d 895, 899, 386 N.E.2d 807, 811 (1978). To state a negligence claim, a complainant must identify a legal duty the defendant owed the plaintiff, prove the defendant's breach of that duty, and show an injury to the plaintiff proximately caused by the defendant's breach. *See Markowitz v. Arizona Parks*

---

**4.** *See Coleman v. Garrison,* 349 A.2d 8 (Del. 1975) (cause of action denied for healthy child born as a result of failed sterilization), *overruled on other grounds by Garrison v. Medical Center of Delaware,* 571 A.2d 786 (Del.Sup.Ct.1989).

**5.** *See Zepeda v. Zepeda,* 41 Ill.App.2d 240, 190 N.E.2d 849 (1963) (father had induced mother to have sexual relations by promising to marry her but promise could not be enforced because he was already married), *cert. denied,* 379 U.S. 945, 85 S.Ct. 444, 13 L.Ed.2d 545 (1964);

*Williams v. State,* 18 N.Y.2d 481, 276 N.Y.S.2d 885, 223 N.E.2d 343 (1966) (illegitimate child born to institutionalized mental patient who had been raped could not state a cause of action; court stated that "[b]eing born under one set of circumstance rather than another or to one pair of parents rather than another is not a suable wrong that is cognizable in court"). *But see Cowe by Cowe v. Forum Group Inc.,* 541 N.E.2d 962 (Ind.App.1989) (illegitimate child of institutionalized parents).

*Bd.,* 146 Ariz. 352, 706 P.2d 364 (1985). Thus, we analyze Christy's claim under traditional principles of negligence law.

### D. Duty and Breach

■ A physician rendering prenatal care has a duty of due care to both the mother and the developing fetus. *Summerfield v. Superior Court,* 144 Ariz. 467, 698 P.2d 712 (1985). If the attending physicians had been negligent in rendering prenatal care and had thereby injured the fetus, Christy could have brought a tort action for the damages caused by the doctor's negligence. *Id.; see generally* Collins, *An Overview and Analysis: Prenatal Torts, Preconception Torts, Wrongful Life, Wrongful Death, and Wrongful Birth: Time for a New Framework,* 22 J.FAM.L. 677 (1983–84); Comment, *Wrongful Life: A Misconceived Tort,* 15 U.C. DAVIS L.REV. 447, 451 (1981) (child has had the right to sue for prenatal torts since 1946).

■ A physician also has a duty to inform parents about fetal problems and risks. Courts that have permitted a child's claim for wrongful life have found that the duty owed to the parent inures derivatively to the child. *See Turpin; Procanik; Harbeson.* Courts that have rejected the claim have also found such a duty. *See, e.g., Azzolino v. Dingfelder,* 315 N.C. 103, 337 S.E.2d 528 (1985), *cert. denied,* 479 U.S. 835, 107 S.Ct. 131, 93 L.Ed.2d 75 (1986); *Becker.* We agree defendants owed such a duty in this case. On the present record, it is assumed defendants breached their duty. Thus, if defendants' negligence injured Christy, she could bring a tort action against them.

Christy does not claim, however, that defendants injured her *in utero* nor does she allege defendants could have done anything to prevent or mitigate the unfortunate conditions with which she is afflicted. The question before us, therefore, is narrow: is birth, even in an impaired condition, a legally cognizable injury? We turn, then, to that issue and to examine the authority on which Christy relies.

### E. Injury

All of the courts that recognize a wrongful life action find it difficult to articulate the nature of the injury caused by the defendants. An injury is simply an invasion of some right possessed by the plaintiff. *See* Restatement (Second) of Torts § 7 (1965); *Bruggeman v. Schimke,* 239 Kan. 245, 718 P.2d 635, 643 (1986); *Siemieniec v. Lutheran Gen. Hosp.,* 117 Ill.2d 230, 111 Ill.Dec. 302, 312, 512 N.E.2d 691, 701 (1987). There can be no tort "except in the case of some individual whose interests have suffered." PROSSER AND KEETON ON THE LAW OF TORTS § 30, at 165 (5th ed.1984).

The highest courts in states recognizing a cause of action for wrongful life have avoided defining the injury. Rather, they concentrated entirely on the damage problem and concluded that it was not possible to award general damages. *See Turpin,* 182 Cal.Rptr. at 347, 643 P.2d at 964 ("[a] monetary award of general damages—as opposed to the claim for medical expenses ... cannot in any meaningful sense compensate the plaintiff for the loss of the opportunity not to be born ..."); *Procanik,* 478 A.2d at 763 (general damages impossible to calculate because "the only proximate result of [defendant's negligence] was the child's birth"); *Harbeson,* 656 P.2d at 496 ("measuring the value of an impaired life as compared to nonexistence is a task that is beyond mortals, whether judges or jurors"); *see also Bruggeman,* 718 P.2d at 643. In each case, the court awarded only special damages.

The difficult problem of quantifying general damages should not have prevented the courts from awarding such damages *if* in fact an injury had occurred. It is the genius of the common law that difficult damage questions are left to juries. *See Meyer v. Ricklick,* 99 Ariz. 355, 357–58, 409 P.2d 280, 281–82 (1965) (damage amount in personal injury action is peculiarly within jury's province, and the "law does not fix precise rules for the measure of damages but leaves their assessment to a jury's good sense and unbiased judgment"); *see*

also *University of Arizona*, 136 Ariz. at 586, 667 P.2d at 1301. If defendants' negligence caused physical injury to the fetus, our cases would require the jury to compare the unknowable value of the child's life without affliction against its almost equally unknowable future value with the affliction. *See Summerfield.* Thus, the problem of quantifying damages should not have prevented *Turpin* and its progeny from awarding general damages.[6] In our view, if an injury has been caused by a breach of duty, then the child is entitled to the general and special damages that result.

■ We believe, therefore, the limited recovery allowed by the courts recognizing the tort of wrongful life exhibits a fundamental casuistry in their reasoning. The conclusion that the child is impaired does not ineluctably imply that the child has suffered a legally congnizable injury. Principles of tort law require that the existence of injury be ascertained first; courts should allow the injury caused by defendant's negligence to define the damages recoverable, rather than allow impairment/damage the defendant did not cause to define the nature of the injury. *See* Comment, *Washington Recognizes Wrongful Birth and Wrongful Life—A Critical Analysis*, 58 WASH.L.REV. 649, 668, 674 (1982-83). In short, if the child cannot prove injury at the hands of the doctor,

> it is unfair and unjust to charge the doctors with the infant's medical expenses. The position that the child may recover special damages despite the failure of his underlying theory of wrongful life violates the moral code underlying our system of justice from which the fundamental principles of tort law are derived.

6. We note also that in California the court of appeal subsequently limited *Turpin* by holding that *Turpin's* reasoning precluded the court from awarding damages for the child's pain and suffering or for the child's loss of earnings. *Andalon v. Superior Court,* 162 Cal.App.3d 600, 208 Cal.Rptr. 899, 907 (1984).

*Procanik,* 478 A.2d at 772 (Schreiber, J., dissenting in part).

In the present case, defendants caused none of the impairments from which Christy suffers. The only result of their negligence was that Christy was born. Thus, we must face the basic question: is life an injury? Christy had no control over whether to be conceived and no ability to prevent her birth. *See* Comment, *supra*, 15 U.C. DAVIS L.REV. at 465. The parents' cause of action may be predicated on the negligent invasion of their right to decide whether to avoid the birth of a child with defects. Children, however, have neither the ability nor the right to determine questions of conception, termination of gestation, or carrying to term. If Christy's parents had decided to allow the pregnancy to continue despite a warning of possible defects, Christy had no legally recognized action against them. If her parents had decided to conceive, despite knowledge of probable congenital defects, the law would recognize no action on Christy's behalf against them.[7]

In short, the ability to decide questions of conception or termination of pregnancy resides in the parents, not the fetus. The law protects parents' rights to make decisions involving procreation. Because defendants negligently failed to provide the parents with information that would have prompted Laura to exercise her right to terminate the pregnancy, any wrong that was done was a wrong to the parents, not to the fetus.

## F. Comparison to Parents' Action

One might argue that if parents have a right to recover the special damages required to provide care for their child's impairments, it would be more sensible and safer for the law to permit the child to recover instead of the parents.

7. A California court of appeal, in fact, suggested children may have a cause of action against their own parents for making the decision not to abort. *See Curlender v. Bio–Science Labs.,* 106 Cal.App.3d 811, 165 Cal.Rptr. 477, 488 (1980). We agree with commentators who find the suggestion "startling." *See* Brown, *Wrongful Life: A Misconceived Tort—An Introduction,* 15 U.C. DAVIS L.REV. 445, 447 (1981).

We acknowledge the problems inherent in allowing some parents to recover sums needed to provide care for their child. Experience teaches that some parents cannot be trusted.[8] Nevertheless, we believe courts are able to handle such problems.

The Delaware Supreme Court recently held that parents who collected damages as a result of the birth of a defective child were in a fiduciary relationship with the child and thus had a duty to account for all sums they recovered as damages during the child's minority or after. *Garrison v. Medical Center of Delaware*, 571 A.2d 786 (Del.Sup.Ct.1989). While the Delaware court based its holding regarding damages after majority on a statute, other courts have found parents have a common law obligation to support a child beyond minority when the child is disabled from supporting himself. *See Phillips v. United States*, 575 F.Supp. 1309, 1316–17 (1983); *Blake v. Cruz*, 108 Idaho 253, 698 P.2d 315, 320–21 (1984); *James G. v. Caserta*, 332 S.E.2d 872, 882–83 (W.Va.1985).

We are not, therefore, persuaded by Christy's argument that it would be anomalous to permit parents to recover in a wrongful birth action but deny the afflicted child recovery in a wrongful life action. Recognition of the wrongful life action would make a substantial difference only in limited circumstances, as when the statute of limitations bars the parents' claim but not the child's or when the parents are unavailable to sue. *See Smith v. Cote*, 128 N.H. 231, 513 A.2d 341, 354 (1986). We are sympathetic to the dilemma such a rare situation presents, but we cannot subvert fundamental legal principles to permit a cause of action when no injury exists.

### G. Other Considerations

■ Finally, our analysis is not affected by the evolving "right to die" doctrine, as Christy claims. *See Rasmussen v. Fleming*, 154 Ariz. 207, 741 P.2d 674 (1987). The choice presented by the right to die cases is between a natural death and the prolongation of life by extraordinary means. In such cases, the court seeks to protect a patient's preference for "a plan of medical treatment that allows nature to take its course and permits [the patient] to die with dignity." *Id.* at 211, 741 P.2d at 678. In this case, the impaired child had neither ability nor legal right to choose nonexistence over life.

### CONCLUSION

The answer to the question certified is that a child born under the circumstances set forth in this case does not have a cause of action in tort for wrongful life. Bringing a child into the world—even one who is impaired—is not a legally cognizable injury to that child. Thus, children suffer no legal injury when a parent, doctor, or other practitioner fails to prevent their birth.

GORDON, C.J., and CAMERON, MOELLER and CORCORAN, JJ., concur.

---

**8.** *See* Comment, *supra*, 15 U.C. DAVIS L.REV. at 470 (discussing necessity of preserving funds for child's welfare to prevent parents from recovering for the future care of the infant and subsequently putting the child up for adoption).