IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

ANDREW MUSCAT, an incompetent person, by Marcie Berman, his
permanent guardian, and MARCIE BERMAN, individually,
*Plaintiffs/Appellants*,

*v.*

CREATIVE INNERVISIONS LLC, an Arizona limited liability company,
and TEMITAYO AKANDE,
*Defendants/Appellees*.

No. 1 CA-CV 16-0388
FILED 12-26-2017

---

Appeal from the Superior Court in Maricopa County
No. CV2014-014300
The Honorable Joshua D. Rogers, Judge

**AFFIRMED IN PART; VACATED AND REMANDED IN PART**

---

COUNSEL

Law Offices of Robert A. Butler, PLLC, Phoenix
By Robert A. Butler
*Co-Counsel for Plaintiffs/Appellants Muscat and Berman*

Law Office of Dennis A. Sever, PLLC, Mesa
By Dennis A. Sever
*Co-Counsel for Plaintiffs/Appellants Muscat and Berman*

Grasso Law Firm, PC, Chandler
By Robert Grasso, Jr., Stephanie L. Samuelson
*Counsel for Defendant/Appellee Creative Innervisions LLC*

Metzger Law Firm, PLLC, Phoenix
By Nathan T. Metzger, Perry E. Casazza
*Counsel for Defendant/Appellee Akande*

---

**OPINION**

Presiding Judge Michael J. Brown delivered the opinion of the Court, in which Judge Jennifer B. Campbell and Judge Margaret H. Downie (retired) joined.

---

**B R O W N**, Judge:

**¶1** Andrew Muscat appeals the superior court's judgment rejecting his claims against Creative Innervisions, LLC, and its employee, Temitayo Akande (collectively, "Creative").[1] Because we conclude that Muscat's alleged harms arise solely from the consequences of his own criminal conduct and thus do not constitute legally cognizable injuries, we affirm the court's dismissal of his negligence claims. We vacate, however, the dismissal of Muscat's vulnerable adult claim and remand for further proceedings.

**FACTUAL AND PROCEDURAL BACKGROUND**

**¶2** Muscat is a "profoundly disabled person" whose disabilities make "impulse control considerably more difficult for him than it is for the typical person." Muscat was convicted of child abuse, a sexually motivated offense and class four felony, and placed on lifetime probation for inappropriately touching a child in a restroom stall in June 2008. In 2011, Muscat was placed into a group home owned by Creative Innervisions, LLC, and approved by ADES's Division of Developmental Disabilities ("Division"). Representatives from the Division and Creative met and developed an Individual Support Plan ("ISP") for Muscat, which required

---

[1] Marcie Berman, Muscat's mother and permanent guardian, also appeals the superior court's judgment. Because her claims depend on the success of Muscat's claims, we need not separately address them.

Creative to provide one-on-one supervision of Muscat at all times, whether in the group home or in the community.

¶3        In December 2012, Akande, the staff member assigned to supervise Muscat, drove Muscat to a local church to attend a theater production.  Instead of accompanying him to the event, Akande dropped him off, leaving him unsupervised.  Inside the church, Muscat followed a child into the restroom and inappropriately touched the child.  Muscat was arrested in November 2013 and charged with aggravated assault and child molestation.

¶4        In December 2014, Muscat filed a complaint alleging negligence, negligent supervision/training/hiring, and violation of the Arizona Adult Protective Services Act ("APSA").  Muscat alleged that "as a result of [his] being left unattended and unsupervised" by Creative, the county attorney's office filed a petition to revoke Muscat's felony probation and charged him with molestation of a child as a repeat felony offender.

¶5        After filing the complaint, Muscat was declared competent to stand trial in the criminal matter, and later pled guilty to attempted child molestation and attempted kidnapping, each a class three felony.[2]  In December 2015, Muscat was sentenced to eight years' imprisonment for attempted molestation (with 751 days' presentence incarceration credit) and lifetime probation for attempted kidnapping.  The sentencing judge found the eight-year sentence was "clearly excessive," thereby allowing Muscat to petition the clemency board for a commutation of sentence pursuant to Arizona Revised Statutes ("A.R.S.") section 13-603(L).  The court recognized that Muscat's "conduct is extremely concerning and warrants a punitive sanction," but that given his "cognitive limitations and disabilities [he] has a diminished level of culpability."

¶6        That same month, Creative filed a motion for judgment on the pleadings in this case, asserting that Muscat's claims were barred by the "wrongful conduct rule" and his complaint failed to state a "cognizable claim" upon which relief could be granted.  The superior court granted the motion, finding that "under the wrongful conduct rule and Arizona law, [Muscat] cannot maintain this action or seek the requested damages

---

[2]        We take judicial notice of the sentencing minute entry in Maricopa County Superior Court Case No. CR 2013-456757-001, which Muscat filed along with his opening brief.  *See* Ariz. R. Evid. 201(b) (allowing courts to take judicial notice of facts that are not the subject of reasonable dispute).

because it resulted from [his] own illegal conduct and cannot be established absent a showing that he has broken the law." This timely appeal followed.

## DISCUSSION

**¶7** "A motion for judgment on the pleadings pursuant to [Arizona Rule of Civil Procedure 12(c)] tests the sufficiency of the complaint, and judgment should be entered for the defendant if the complaint fails to state a claim for relief." *Giles v. Hill Lewis Marce*, 195 Ariz. 358, 359, ¶ 2 (App. 1999). We accept the allegations of the complaint as true, but review de novo the court's legal determinations. *Id.* We will affirm the court's disposition if it is correct for any reason. *Logerquist v. Danforth*, 188 Ariz. 16, 18 (App. 1996).

### A. Negligence Claims

**¶8** A plaintiff asserting negligence must prove: "(1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting *injury*; and (4) actual damages." *Gipson v. Kasey*, 214 Ariz. 141, 143, ¶ 9 (2007) (emphasis added). Duty is an "obligation, recognized by law, which requires the defendant to conform to a particular standard of conduct in order to protect others against unreasonable risks of harm." *Id.* at ¶ 10.

**¶9** Creative argues the "wrongful conduct rule" bars Muscat's claims because a wrongdoer should not be able to base a tort claim on his own wrongful actions. *See, e.g., Greenwald v. Van Handel*, 88 A.3d 467, 472 (Conn. 2014) (noting that the "generally articulated" wrongful conduct rule provides "that a plaintiff cannot maintain a tort action for injuries that are sustained as the direct result of his or her knowing and intentional participation in a criminal act"). As recognized by the parties, Arizona has never explicitly addressed the wrongful conduct rule, which has been adopted in several jurisdictions and rejected in others. The rule has been described by some as "slippery and vexing." *See* Joseph H. King, Jr., *Outlaws and Outlier Doctrines: The Serious Misconduct Bar in Tort Law*, 43 Wm. & Mary L. Rev. 1011, 1076 (2002). Notwithstanding Creative's attempt to

narrowly define the wrongful conduct rule, given the following analysis, we need not decide whether it applies here.[3]

¶10        Muscat alleged in part that Creative had a special relationship with him that imposed a duty to "prevent the foreseeable harm that could occur if [he] was left alone, unsupervised around children and/or around a public restroom." Muscat also alleged that the purpose of "having one-on-one supervision," including in public restrooms, was to "protect [him] from harm due to his lack of impulse control." As further explained by the sentencing judge, because Muscat was unable to participate in sex offender treatment or counseling given his mental disabilities, a protocol was established wherein Creative agreed "to insure lawful conduct by [Muscat] and prevent recidivism." As such, Creative was required to have a "one-on-one chaperone present when [Muscat] participated in day programs of the group home" and he was "not allowed to enter a public bathroom without his chaperone."

¶11        Whether a duty exists is a "threshold issue" because "absent some duty, an action for negligence cannot be maintained." *Gipson*, 214 Ariz. at 143, ¶ 11. Given the special relationship between Muscat and Creative, and the specific obligations Creative accepted or agreed to perform, Creative had a duty to properly supervise Muscat. *Id.* at 145, ¶ 18 ("Duties of care may arise from special relationships based on contract, family relations, or conduct undertaken by the defendant."); *DeMontiney v. Desert Manor Convalescent Ctr. Inc.*, 144 Ariz. 6, 11 (1985) (recognizing a special relationship exists "[w]hen an institution . . . is charged with the care and custody of persons who it knows will be likely to harm themselves"). And on this record, Muscat has clearly alleged a breach of Creative's duty in that it left him alone and unsupervised at the church in violation of the ISP. However, for the reasons explained below, Muscat has failed to allege a legally cognizable injury. *See Walker v. Mart*, 164 Ariz. 37, 41-42 (1990) (analyzing duty and injury as separate legal issues).

¶12        In *Walker*, our supreme court was confronted with whether Arizona recognized the tort of "wrongful life," an issue of first impression. 164 Ariz. at 38. Analyzing the plaintiff's claim "under traditional principles of negligence law," the court found a duty existed and assumed a breach thereof. *Id.* at 41. The court then turned to a narrower question: "[I]s birth,

---

[3]      We do not address Creative's liability for injuries to the victim or any other party that is not part of this litigation. Nor do we consider whether Muscat has any viable negligence claims if his convictions are set aside.

even in an impaired condition, a legally cognizable injury?" *Id.* Citing the Restatement (Second) of Torts ("Restatement") (1965), the court explained that "[a]n injury is simply an invasion of some right possessed by the plaintiff." *Id.* Under this definition, the court acknowledged that "the ability to decide questions of conception or termination of pregnancy resides in the parents, not the fetus," and that the "law protects parents' rights to make decisions involving procreation." *Id.* at 42. Thus, because "children suffer no legal injury when a parent, doctor, or other practitioner fails to prevent their birth," the court declined to extend the tort of negligence to include a child's claim of wrongful life. *Id.* at 43.

¶13        The Restatement defines "injury" as "the invasion of any legally protected interest of another," and "harm" as "the existence of loss or detriment in fact of any kind to a person resulting from any cause." Restatement § 7. In contrasting these definitions, the Restatement's comments explain that although a "harm" may exist, that does not mean there has been an "invasion of a legally protected interest," and that "there may be an injury although no harm is done." *Id.* § 7 cmt. a; *see also id.* § 7 cmt. d (stating that harm is actionable "only when it results from the invasion of a legally protected interest").

¶14        The parties do not dispute the alleged injuries arise only out of Muscat's incarceration, which resulted from his arrest and criminal prosecution. But as the parties acknowledged at oral argument, no court in any jurisdiction has concluded that a custodian may be found liable for negligence based solely on consequences that flow from the ward's commission of a crime. We must therefore determine, as in *Walker*, whether the alleged harm constitutes an injury that is recognized by law.

¶15        In his complaint, Muscat alleges that he suffered, *inter alia*, loss of freedom, loss of participation in life's activities, pain, suffering, distress, mental and emotional anguish, anxiety, and a decrease in the quality of life. Muscat did not allege that Creative caused him to suffer any physical harm. It is undisputed that Muscat was properly incarcerated, meaning he was sentenced to prison (with presentence incarceration credit) after he was found competent to stand trial and found guilty of the offenses set forth in the plea agreement. Given that his alleged injuries arise only out of a legally imposed incarceration, Muscat alleges no injury that is distinct from the consequences of his prison sentence. Criminal defendants have legally protected interests that may be affected during criminal proceedings, but no properly-convicted criminal has a legally protected interest in being free from the inherent consequences of the resulting sentence. *See Levine v. Kling*, 123 F.3d 580, 582 (7th Cir. 1997) ("Tort law

provides damages only for harms to the plaintiff's legally protected interests, and the liberty of a guilty criminal is not one of them.") (internal citation omitted). And although "physical liberty" has been described as one of the "three broad categories of legal interests" protected by tort law, Dobbs et al., *The Law of Torts* § 3 (2d ed. 2011), we are unaware of any *unintentional* tort that protects this interest, *see* Restatement § 35 cmt. h (explaining that the tort of false imprisonment protects the "mere dignitary interest in feeling free to choose one's own location," but that this interest is legally protected against only intentional invasions).

¶16 Muscat's inability to pursue a negligence claim for alleged harm arising from his criminal prosecution is consistent with the rationale governing other torts that depend on the ultimate outcome of a criminal prosecution. *See, e.g.*, *Glaze v. Larsen*, 207 Ariz. 26, 32, ¶ 25 (2004) (recognizing that an element of the cause of action for legal malpractice stemming from criminal litigation is that the conviction has been set aside); *Slade v. City of Phoenix*, 112 Ariz. 298, 300 (1975) (noting the essential elements of malicious prosecution include a criminal prosecution that terminates in favor of plaintiff).

¶17 Moreover, recognizing the legal consequences of a ward's criminal conduct as a legally cognizable injury would distort the long-established public policy of personal accountability for criminal behavior. Muscat received lawfully imposed sentences based on his criminal conduct; thus, it would be inconsistent to allow him to recover damages for the harm he has suffered as a result of his criminal punishment. *See* A.R.S. § 13-101 (declaring that one of the purposes of the criminal code is to "impose just and deserved punishment on those whose conduct threatens the public peace"); *Glazier v. Lee*, 429 N.W.2d 857, 860 (Mich. App. 1988) (explaining that to allow plaintiff, who was convicted of manslaughter, to bring a professional negligence action "would allow plaintiff to shift the responsibility for his crime from himself to defendant"); *Holt v. Navarro*, 932 A.2d 915, 923, ¶¶ 21-24 (Pa. Super. Ct. 2007) (holding that plaintiff was barred from "benefitting in a civil suit flowing from his criminal convictions" where he committed crimes after escaping from a hospital's supervision).

¶18 Our analysis is consistent with decisions made by other courts that have considered the viability of tort claims arising solely from the consequences of a plaintiff's criminal conduct. *See, e.g.*, *Burcina v. Ketchikan*, 902 P.2d 817, 819, 821 (Alaska 1995) (precluding psychiatric patient convicted of arson for setting fire to mental health center from seeking compensation from psychiatrist and mental health center for injuries

resulting from conviction and imprisonment); *Greenwald*, 88 A.3d at 472 (finding that trial court properly dismissed plaintiff's claim that his therapist's failure to treat him caused "emotional distress and other injuries due to potential criminal prosecution" related to "the illegal downloading, viewing and/or possession of child pornography"); *Glazier*, 429 N.W.2d at 858 (precluding former patient convicted of manslaughter from maintaining professional negligence action against psychologist for emotional and psychological injuries resulting from patient's criminal act); *Holt*, 932 A.2d at 923, ¶¶ 22-24 (holding that medical providers could not be held liable for the "collateral consequences" of the plaintiff's criminal convictions for robbery and assault).[4]

**¶19**      Given these considerations, we hold that a person who has been properly incarcerated for a criminal conviction has not suffered a legally cognizable injury—for purposes of establishing a negligence claim—when the alleged harm flows solely from the incarceration. Therefore, the superior court properly determined that Muscat cannot recover from Creative based on his negligence claims.[5]

**¶20**      Our holding does not offend the protection granted to tort victims under Arizona's anti-abrogation clause, which provides that "[t]he right of action to recover damages for *injuries* shall never be abrogated, and the amount recovered shall not be subject to any statutory limitation." Ariz. Const. art. 18, § 6 (emphasis added). Although this provision protects an

---

[4]      The authorities Muscat relies on are inapposite because the injuries claimed arose from physical harms suffered by the plaintiffs. *See Sonoran Desert Investigations, Inc. v. Miller*, 213 Ariz. 274, 275-77, ¶¶ 1, 6 (App. 2006) (allowing wrongful death action to proceed to jury trial where plaintiff's husband died after being physically restrained and choked on suspicion of shoplifting); *Tug Valley Pharmacy, LLC v. All Plaintiffs Below In Mingo Cty.*, 773 S.E.2d 627, 628, 636 (W. Va. 2015) (allowing plaintiffs to maintain tort claim against pharmacies and physicians for "negligently prescrib[ing] and dispens[ing] controlled substances," where the alleged injuries were addiction to and abuse of the controlled substances).

[5]      As to Berman, she concedes that if we conclude that Muscat's negligence claims are not viable, then her claims cannot survive because they are derivative of Muscat's negligence claims. Thus, the superior court properly granted judgment on the pleadings as to Berman's claims. *See, e.g., Barnes v. Outlaw*, 192 Ariz. 283, 286, ¶ 8 (1998) ("[B]ecause loss of consortium is a derivative claim, all elements of the underlying cause must be proven before the claim can exist.").

individual's right to file a negligence action, *Baker v. Univ. Physicians Healthcare*, 231 Ariz. 379, 388, ¶ 39 (2013), we are aware of no authority suggesting that "injuries" under the anti-abrogation clause should be interpreted differently than "injuries" recognized under tort law, *see Samaritan Health Sys. v. Superior Court of State of Ariz.*, 194 Ariz. 284, 293-94, ¶¶ 37, 44 (App. 1998) (explaining that the founders' intent was "to limit the application of the anti-abrogation clause to tort claims"). Thus, the right to bring an action for damages is unaffected; indeed, no cause of action exists when a plaintiff does not allege a legally cognizable injury. *See Romero v. Sw. Ambulance*, 211 Ariz. 200, 205, ¶ 12 (App. 2005) ("When a statute does not abrogate any viable right of action to recover damages, it does not violate article 18, § 6.") (internal quotation omitted); *Perkins v. Ne. Log Homes*, 808 S.W.2d 809, 814 (Ky. 1991) (explaining, in addressing Kentucky's open courts constitutional provision, that a negligence action does not exist until there is an injury). Similarly, if a plaintiff is unable to allege a *prima facie* case of negligence, a court's decision to grant judgment on the pleadings is not in conflict with the constitutional doctrines of contributory negligence or assumption of risk. *See* Ariz. Const. article 18, § 5 ("The defense of contributory negligence or of assumption of risk shall, in all cases whatsoever, be a question of fact and shall, at all times, be left to the jury.").

¶21 Nor are we persuaded that affirming the dismissal of Muscat's negligence claims runs counter to the intended application of A.R.S. § 12-712(A), which provides in part as follows:

> In any civil action the finder of fact may find the defendant not liable if the defendant proves that the claimant . . . was attempting to commit, committing or immediately fleeing from a felony criminal act and as a result of that act, attempted act or flight, the claimant or decedent was at least fifty per cent responsible for the accident or event that caused the claimant's or decedent's harm.

Muscat contends that under this statute, the trier of fact should determine whether he was more than 50% at fault. Section 12-712(A), like the constitutional provisions discussed above, does not apply unless the plaintiff alleged a *prima facie* case of negligence.

### B. Vulnerable Adult Claim

¶22 For his APSA claim, Muscat alleges he is a vulnerable adult and was injured by Creative's abuse and neglect. *See* A.R.S. § 46-455(B) ("A vulnerable adult whose life or health is being or has been endangered or

injured by neglect, abuse or exploitation may file an action in superior court against any person . . . that has assumed a legal duty to provide care or that has been appointed by a court to provide care to such vulnerable adult for having caused or permitted such conduct."). Creative did not address the APSA claim in its motion for judgment on the pleadings, and although the claim was briefly addressed in the response and the reply, neither of the parties engaged in any meaningful statutory analysis of the vulnerable adult statutes. Nor did the superior court separately analyze the APSA claim in its detailed ruling. Likewise, on appeal, the parties have not provided any helpful briefing on this issue, which cannot be resolved merely by relying on the analysis we have applied to the negligence claims. Whether Muscat has stated a viable claim under A.R.S. § 46-455(B) must be considered by the superior court in the first instance.

## CONCLUSION

**¶23**        We affirm the portion of the superior court's judgment dismissing Berman's claims and Muscat's negligence claims. We vacate, however, the dismissal of Muscat's APSA claim and remand for further proceedings.



AMY M. WOOD • Clerk of the Court
FILED:  AA

10