May 27, 2022

**Supreme Court**

Jean Ho-Rath et al.                    :

            v.                         :          No. 2020-227-Appeal.
                                                  (PC 10-4186)
Corning Incorporated et al.            :

Yendee Ho-Rath et al.                  :

            v.                         :          No. 2020-228-Appeal.
                                                  (PC 17-125)
Rhode Island Hospital et al.           :

NOTICE:   This opinion is subject to formal revision
before publication in the Rhode Island Reporter.  Readers
are requested to notify the Opinion Analyst, Supreme
Court of Rhode Island, 250 Benefit Street, Providence,
Rhode Island 02903, at Telephone 222-3258 or Email
opinionanalyst@courts.ri.gov  of  any  typographical  or
other formal errors in order that corrections may be made
before the opinion is published.

| | | |
|---|---|---|
| Jean Ho-Rath et al. | : | |
| v. | : | No. 2020-227-Appeal. |
| | | (PC 10-4186) |
| Corning Incorporated et al. | : | |
| Yendee Ho-Rath et al. | : | |
| v. | : | No. 2020-228-Appeal. |
| | | (PC 17-125) |
| Rhode Island Hospital et al. | : | |

Present:  Suttell, C.J., Robinson, and Lynch Prata, JJ.

**O P I N I O N**

**Justice Lynch Prata, for the Court.**  In these consolidated appeals the plaintiffs, Jean Ho-Rath, Bunsan Ho-Rath, and Yendee Ho-Rath (collectively plaintiffs),[1] appeal from judgments of the Superior Court entered in favor of the defendants, Corning Incorporated (Corning), Quest Diagnostics, LLC (Quest), Rhode Island Hospital (RIH), Women & Infants Hospital of Rhode Island (WIH),

---

[1] The plaintiffs' first names will be used throughout this opinion to avoid confusion. No disrespect is intended.

Marsha Sverdrup, M.S., and Jami A. Star, M.D. (collectively defendants).[2] The plaintiffs assert that the hearing justice erred in finding that the defendants owed them no duty of care. For the reasons set forth herein, we affirm the judgments of the Superior Court.

**Facts and Travel**

This Court has twice before been presented with questions relative to the statute of limitations applicable to plaintiffs' claims. *See Ho-Rath v. Rhode Island Hospital*, 115 A.3d 938, 946, 950 (R.I. 2015) (*Ho-Rath II*) (holding that a minor plaintiff in a medical malpractice action has two options to comply with the applicable statute of limitations: (1) suit may be filed on the minor's behalf within three years of the occurrence or reasonable discovery of the alleged malpractice; or (2) the minor may file suit on their own behalf upon reaching the age of majority, and further holding that a parent's claim for loss of consortium in a medical malpractice action is tolled in tandem with the minor's claim from which it is derived); *Ho-Rath v. Rhode Island Hospital*, 89 A.3d 806, 812 (R.I. 2014) (*Ho-Rath I*) (holding that claims asserted by plaintiffs against laboratories sounded in ordinary negligence and were governed by the statute of limitations set forth in G.L. 1956

---

[2] We recognize that there are various and differing claims asserted against each individual defendant. Some of these claims sound in medical negligence, while others sound in ordinary negligence. Unless this distinction implicates the analysis of the issues before this Court, we shall refer to the defendants collectively for ease of reference.

§ 9-1-19). Although many of the facts in this case are set forth in those opinions, because the present appeals involve a substantive challenge to the viability of plaintiffs' claims, we shall set forth the facts and procedural history *in toto*.

Jean and Bunsan are the parents of Yendee, who was born January 9, 1998, at WIH. In the months and years following her birth, Yendee underwent genetic testing for alpha thalassemia, a genetic blood disorder that impairs the production of hemoglobin and can lead to "severe and fatal anemia." Stedman's Medical Dictionary 1969 (28th ed. 2006). According to Jean, by October 2003 Yendee was "very ill[,]" and she was ultimately confirmed to have Hemoglobin H disease.

Yendee was Jean and Bunsan's second child. During her first pregnancy, Jean presented to WIH for prenatal care and, due to her Southeast Asian descent, she was offered genetic counseling and testing "to possibly rule out carrier status of beta thalassemia." The results of two hemoglobin electrophoreses performed by MetPath Teterboro Laboratory (MetPath)[3] in February and May 1993 indicated that Jean had

---

[3] According to interrogatory answers submitted by Quest, MetPath was acquired by Corning in 1982 and operated as a subsidiary corporation through 1996. Thereafter, MetPath was spun off into Quest, a named defendant in this case.

a normal pattern.[4]  Sanhkdee, Jean and Bunsan's first child, was born on November 15, 1993, and, as part of a clinical project, WIH sent both Sanhkdee's and Jean's blood to RIH for hemoglobin electrophoresis.[5]  The results from RIH showed that both Jean and Sanhkdee tested positive for the presence of alpha thalassemia. Thereafter, Bunsan's blood was sent to MetPath for hemoglobin electrophoresis; on December 28, 1993, it was reported that Bunsan had a normal pattern.

While pregnant with Yendee, Jean again presented to WIH for prenatal care and genetic counseling.  A counselor and a doctor from WIH's Prenatal Diagnosis Center prepared a report on July 29, 1997, detailing the presence of alpha thalassemia that became apparent after Sanhkdee's birth.  The report opined, based on an evaluation performed by B.E. Barker, Ph.D. at RIH's Special Hematology Laboratory, that Sanhkdee "most likely has a two gene alpha thalassemia deletion as does Ms. Ho-Rath and that Mr. Rath most likely does not carry a two gene alpha thalassemia deletion, however a single gene alpha thalassemia mutation may be

---

[4] Jean testified at her deposition on November 21, 2017, that the results of the February 1993 electrophoresis revealed that she had "a Thalassemia Trait and the genetic counselor want[ed] to find out if [her] husband has the same * * * Trait." She recalled Bunsan being tested in 1993 but could not recall where he had that test. She stated that a genetic counselor at WIH told her that Bunsan's blood work results were normal.  There is no other evidence in the record of the results of that test. Moreover, the results of the February and May 1993 electrophoreses performed on Jean showed she had a normal pattern.

[5] Sanhkdee is not a party to these proceedings.

present." (Emphasis omitted.)  The report stated that the health-care professionals from WIH discussed alpha thalassemia with Jean "in full[,]" and counseled her that if Bunsan carries "a single gene mutation there would be a 25% chance for this fetus to have hemoglobin H disease."

When Yendee became seriously ill in 2003, her blood sample was tested by RIH's Special Hematology Laboratory and it was confirmed that she had "Hemoglobin Constant Spring trait and a two gene deletion alpha thalassemia trait is present."  Approximately sixteen months later, Bunsan was tested by RIH's laboratory; on May 6, 2005, Dr. Barker reported that Bunsan "has been shown to possess Hb Constant Spring trait."

Jean and Bunsan first filed suit individually and on behalf of Yendee on July 12, 2010.  The complaint alleged that numerous defendants, many of whom are not parties to the present appeal, were negligent in failing to properly diagnose, test, treat, and care for plaintiffs and that, as a result of the alleged negligence, Yendee suffered injuries and Jean and Bunsan suffered loss of consortium.  A Superior Court justice entered judgments in favor of Corning, Quest, and WIH in August 2011 because she found that various claims advanced by plaintiffs were barred by the applicable statute of limitations.  On appeal, this Court found that plaintiffs' claims against Corning and Quest remained viable because they sounded in ordinary negligence and were tolled by § 9-1-19. *Ho-Rath I*, 89 A.3d at 812; *see* § 9-1-19 ("If

any person at the time of any such cause of action shall accrue to him or her shall be under the age of eighteen (18) years, * * * the person may bring the cause of action, within [three years], after the impediment is removed.").

As to the remaining medical malpractice claims, this Court concluded—after full briefing and argument—that the applicable statute of limitations

> "provides a minor plaintiff * * * with two options. First, the minor's parent or guardian may file suit on the minor's behalf within three years of the occurrence or reasonable discovery of alleged malpractice. Alternatively, if the minor's parent or guardian fails to file suit on the minor's behalf within those three years, then the minor may file suit on his or her own behalf, but not until he or she reaches the age of majority. Upon reaching the age of majority, he or she has three years within which to file the action." *Ho-Rath II*, 115 A.3d at 946.

Thus, the Court held that, because Jean and Bunsan's claims on behalf of Yendee had been brought in July 2010 when Yendee was twelve years old, which was more than three years after the alleged occurrence of malpractice, plaintiffs' claims were appropriately dismissed. *Id.* at 941, 948. However, the Court reiterated that Yendee could file suit on her own behalf after she attained the age of majority. *Id.* at 948. The Court further held that Jean and Bunsan's claims of loss of consortium were derivative of Yendee's claims and were tolled in tandem with her claim. *Id.* at 950.

The case was returned to the Superior Court, where the parties engaged in discovery and motion practice. On January 9, 2017, Yendee—having reached the age of majority—filed an individual complaint against various defendants; Jean and

Bunsan also filed their individual derivative loss-of-consortium claims. Based upon this Court's rulings in *Ho-Rath I* and *Ho-Rath II*, the only remaining defendants in the 2010 case were Quest and Corning; the 2010 case was consolidated with the 2017 case for discovery by order of the Superior Court on May 16, 2017.

In 2019, defendants filed motions for summary judgment in both cases. The defendants maintained that Yendee's claim should be characterized as a wrongful life cause of action because "Yendee claims that if her parents had known there was a risk that she would be born with Hemoglobin H Constant Spring Disease, her mother would have had an abortion and she never would have been born." The defendants argued, however, that wrongful life is not a recognized cause of action in Rhode Island. The defendants further argued that Yendee's claim failed under a traditional negligence analysis because, they maintained, there was no duty owed to Yendee because she was not yet conceived when the alleged negligent conduct occurred.

A hearing on defendants' motions for summary judgment took place over two days, on November 8 and December 16, 2019. On June 8, 2020, the hearing justice delivered an oral pronouncement granting defendants' motions for summary judgment. The hearing justice declined to address whether a wrongful life claim is a viable cause of action in Rhode Island, and instead reviewed the case "through the

medical negligence lens" as to the hospitals and doctors, and "through an ordinary negligence lens for the labs."

The hearing justice found that "there is no duty owed to Yendee as a matter of law by any of the defendants in this case." In so doing, the hearing justice reviewed the factors outlined in the seminal case of *Banks v. Bowen's Landing Corp.*, 522 A.2d 1222 (R.I. 1987),[6] and found that (1) there was no foreseeability of harm to Yendee because all the events giving rise to the cause of action "occurred * * * years before Yendee's birth[] and the defendants had absolutely no control over whether or not Yendee would ever be born or conceived"; (2) Yendee did not suffer a cognizable injury; and (3) the remaining factors weighed in favor of defendants. In addition, the hearing justice found no merit in Yendee's remaining claims for informed consent, corporate lability, and vicarious liability because there was no duty owed by defendants to Yendee, and Yendee was not a patient at the time

---

[6] The *Banks* factors include:

> "(1) the foreseeability of harm to the plaintiff, (2) the degree of certainty that the plaintiff suffered an injury, (3) the closeness of connection between the defendant's conduct and the injury suffered, (4) the policy of preventing future harm, and (5) the extent of the burden to the defendant and the consequences to the community for imposing a duty to exercise care with resulting liability for breach." *Banks v. Bowen's Landing Corp.*, 522 A.2d 1222, 1225 (R.I. 1987).

- 8 -

of the allegedly negligent acts or omissions and "could not make any informed decision about anything."

On numerous occasions during her oral pronouncement the hearing justice noted that the foreseeability of harm and/or injury flowed to Jean and Bunsan and that, if there was any duty owed by defendants, it was owed to Jean and Bunsan. However, because the hearing justice found that Yendee's claims failed as a matter of law and Jean and Bunsan's loss-of-consortium claims "are derivative to and 100 percent dependent on the viability of Yendee's claims[,]" she determined that judgment should enter for defendants on Jean and Bunsan's claims as well.

Judgments entered in favor of all defendants on July 17, 2020. The plaintiffs filed timely notices of appeal on July 20, 2020, and this Court consolidated the appeals for briefing and argument.

### Standard of Review

"A decision granting summary judgment is reviewed *de novo* by this Court." *Saint Elizabeth Home v. Gorham*, 266 A.3d 112, 113 (R.I. 2022). We apply the same standards as the hearing justice and "view the evidence in the light most favorable to the nonmoving party, and if we conclude that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law, we will affirm the judgment." *Providence Place Group Limited, Partnership v. State by and through Division of Taxation*, 266 A.3d 1231, 1234 (R.I. 2022) (quoting

*Citizens Bank, N.A. v. Palermo*, 247 A.3d 131, 133 (R.I. 2021)). "Although summary judgment is recognized as an extreme remedy, to avoid summary judgment the burden is on the nonmoving party to produce competent evidence that proves the existence of a disputed issue of material fact." *Saint Elizabeth Home*, 266 A.3d at 114 (quoting *Citizens Bank, N.A.*, 247 A.3d at 133).

**Discussion**

On appeal, plaintiffs maintain that the hearing justice erred in finding that defendants owed no duty to plaintiffs. Specifically, plaintiffs argue that the *Banks* factors "support a finding of duty running from the defendants to Yendee" because, they contend, the harm to Yendee was foreseeable, the harm could have been discovered by defendants in the exercise of due care, and public policy considerations weigh in favor of imposing a duty on defendants.

It is well settled that "[t]o properly assert a claim for negligence, 'a plaintiff must establish a legally cognizable duty owed by a defendant to a plaintiff, a breach of that duty, proximate causation between the conduct and the resulting injury, and the actual loss or damage.'" *Laprocina v. Lourie*, 250 A.3d 1281, 1285 (R.I. 2021) (quoting *Ouch v. Khea*, 963 A.2d 630, 633 (R.I. 2009)). Although this Court has oft cautioned that "issues of negligence are ordinarily not susceptible of summary adjudication, but should be resolved by trial in the ordinary manner[,]" *DeMaio v. Ciccone*, 59 A.3d 125, 130 (R.I. 2013) (quoting *Gliottone v. Ethier*, 870 A.2d 1022,

- 10 -

1028 (R.I. 2005)), we have also recognized that "the existence of a duty is a question of law." *Laprocina*, 250 A.3d at 1285-86 (quoting *Berard v. HCP, Inc.*, 64 A.3d 1215, 1218 (R.I. 2013)). As such, if there is no legal duty owed by the defendant to a plaintiff, "'the trier of fact has nothing to consider' and the grant of summary judgment is proper." *Id.* at 1286 (quoting *Berard*, 64 A.3d at 1218).

We begin our analysis of the case at bar by addressing whether plaintiffs' complaint raises a new cause of action for wrongful life that heretofore has not been recognized in Rhode Island. We are of the opinion that characterizing the suit as one for "wrongful life" does not confer upon it a different legal status or require a different legal analysis from any other negligence or medical-negligence action. As a threshold matter, and to withstand summary judgment, plaintiffs must prove a duty running from defendants to plaintiffs. *See Hydro-Manufacturing, Inc. v. Kayser-Roth Corp.*, 640 A.2d 950, 955 (R.I. 1994) ("[C]ritical to every negligence action is the identification of a duty running from the defendant to the plaintiff."). The hearing justice correctly recognized this and analyzed the case in accordance with traditional principles of negligence. We shall do the same.

Because we have not yet had the opportunity to address the issue of whether hospitals, doctors, and/or laboratories owe a duty to a child born with physical defects who alleges that, because of negligence, their parents either (1) decided to conceive them in ignorance of the risk of impairment, or (2) were deprived of

- 11 -

information that would have caused them to terminate the pregnancy, we "turn to the relevant common law duty factors[.]" *Laprocina*, 250 A.3d at 1287. This analysis begins with a discussion of cases from other jurisdictions concerning the issue.

A majority of jurisdictions that have addressed the issue have concluded that actions seeking damages and brought by or on behalf of children born with physical defects allegedly due to the defendants' failure to warn of potential defects are not entitled to recovery. *See, e.g.*, *Tomlinson v. Metropolitan Pediatrics, LLC*, 412 P.3d 133, 137, 157 (Or. 2018) (concluding that there was no viable cause of action where defendants' failure to diagnose genetic disorder in older sibling led to younger sibling's conception because to hold otherwise would "necessarily depend[] on the premise that [infant-plaintiff] had a legally protected interest in not being born,

rather than risk being born with" hereditary defects).[7]  These courts have applied

factors that are closely aligned with our own jurisprudence.

As this Court has recognized, "[i]n Rhode Island, there is no bright-line rule

for determining whether a legal duty exists." *Laprocina*, 250 A.3d at 1288.  Rather,

the determination of whether a defendant owes a duty to a particular plaintiff "must

be made on a case-by-case basis." *Id.*  However, guiding the determination of

---

[7] Other courts around the country have reached a similar conclusion. *See Donovan v. Idant Laboratories*, 625 F. Supp. 2d 256, 271 (E.D. Pa. 2009), *aff'd sub nom. D.D. v. Idant Laboratories*, 374 F. App'x 319 (3d Cir. 2010) (applying New York state law and holding that a child could not pursue negligence claim against sperm bank for allegedly improperly testing and screening sperm for genetic abnormalities because there is no duty of care owed to an individual not yet in utero when the alleged negligence occurred); *Clark v. Children's Memorial Hospital*, 955 N.E.2d 1065, 1083 (Ill. 2011) (holding that "[a] child who is born with a genetic or congenital condition does not have a cause of action * * * against a health care provider whose breach of the standard of care 'precluded an informed parental decision to avoid his conception or birth'") (quoting *Siemieniec v. Lutheran General Hospital*, 512 N.E.2d 691, 695 (Ill. 1987); *Willis v. Wu*, 607 S.E.2d 63, 71 (S.C. 2004) (holding that "being born with a naturally occurring defect or impairment does not constitute a legally cognizable injury"); *Greco v. United States*, 893 P.2d 345, 347 (Nev. 1995) (holding that no cause of action existed on behalf of child against physician for injuries claimed to have been caused to child by negligent diagnosis or treatment of child's mother, which was alleged to have deprived mother of her opportunity to terminate the pregnancy); *Walker, by Pizano v. Mart*, 790 P.2d 735, 740 (Ariz. 1990) (holding that a child born with severe defects could not maintain a cause of action against physician because "the ability to decide questions of contraception or termination of pregnancy resides in the parents, not the fetus[,]" and therefore the child sustained no injury); *Smith v. Cote*, 513 A.2d 341, 352 (N.H. 1986) (holding that an unborn child does not have an interest in avoiding her own birth because there was no legal injury incurred as a result of the defendant's conduct and "compelling policy considerations militate against recognition" of the claim); *Elliott v. Brown*, 361 So.2d 546, 548 (Ala. 1978) (holding that there is no legal right not to be born).

- 13 -

whether a duty exists in a particular situation is informed by the *Banks* factors, as delineated *infra*.

Applying the *Banks* factors to the case before us, we conclude that the first three factors tip in defendants' favor. *See Banks*, 522 A.2d at 1225 (explaining the first three factors as "(1) the foreseeability of harm to the plaintiff, (2) the degree of certainty that the plaintiff suffered an injury, [and] (3) the closeness of connection between the defendant's conduct and the injury suffered"). First, we note that Yendee and defendants did not have a doctor-patient relationship because the allegedly negligent conduct occurred in 1993, and Yendee was not born until 1998, five years after the subject genetic testing occurred.[8] *See Schenck v. Roger Williams General Hospital*, 119 R.I. 510, 515, 382 A.2d 514, 517 (1977) (reciting the standard of care that governs a physician's conduct *while a patient is under* his or her care). Moreover, whether defendants were or were not negligent does not implicate the foreseeability of harm to Yendee because Yendee was allegedly "harmed" by her birth, not the means undertaken by defendants in conducting genetic testing on her parents. *See Woodruff v. Gitlow*, 91 A.3d 805, 815 (R.I. 2014) (concluding that harm

---

[8] This also vitiates Yendee's ability to maintain claims for lack of informed consent. As this Court has stated, a claim of lack of informed consent is premised on a physician's failure to inform a patient "as to what was to be done, the risk involved and the alternatives to the contemplated treatment." *Flanagan v. Wesselhoeft*, 712 A.2d 365, 370 (R.I. 1998) (emphasis omitted) (quoting *Wilkinson v. Vesey*, 110 R.I. 606, 619-20, 295 A.2d 676, 685 (1972)). Yendee was never a patient of any of the defendants in this matter.

to a plaintiff was not foreseeable when a doctor reviewed records and determined that the plaintiff was alcohol-dependent, because it was the plaintiff's alcohol dependence that caused him harm, not the doctor's reporting of the dependence).

As to the second *Banks* factor, it is impossible for us to determine whether Yendee has suffered an injury in being born impaired, rather than not being born at all.[9] Yendee alleges that her birth is the result of defendants' negligence, and but for the allegedly negligent conduct she would not have been born at all. The plaintiffs principally rely on *Emerson v. Magendantz*, 689 A.2d 409 (R.I. 1997), to support their contention that a physician may be held liable for failing to prevent the birth of a disabled individual. However, plaintiffs' interpretation of the *Emerson* holding is misguided. In *Emerson*, this Court was confronted with a claim advanced by the parents of a child born with congenital problems resulting from a failed tubal ligation procedure performed on the plaintiff-mother. *Emerson*, 689 A.2d at 410. The Court, relying on jurisdictional perlustration, concluded that it would, along with "approximately thirty-five jurisdictions[,] recognize a cause of action for negligent performance of sterilization procedures whether performed on the wife or on the

---

[9] Although we recognize that Yendee's condition will require her to undergo regular blood transfusions for the rest of her life and generally results in a shorter life expectancy and greater susceptibility to sickness, Yendee testified at her deposition that she is happy to be alive and that she is excelling in her studies. She graduated from high school with a 4.0 grade point average and, at the time of her deposition, was attending college at the University of Vermont.

husband." *Id.* at 411. The Court never addressed, or suggested that, a child born as a result of a failed sterilization procedure could individually bring suit and advance a claim that their very birth was injurious.

Absent clear legislative guidance to the contrary, we are persuaded by the overwhelming majority of opinions that refuse to recognize life, even a life with severe impairments or illnesses, as an injury in the legal sense. *See, e.g.*, *Bruggeman by and through Bruggeman v. Schimke*, 718 P.2d 635, 639 (Kan. 1986) (discussing that a majority of jurisdictions "have generally been reluctant to find that the child plaintiff has suffered a legally cognizable injury by being born impaired rather than not being born at all"). There is also a tenuous connection between defendants' actions and Yendee's alleged injuries. The defendants did not direct or control Yendee's conception; her parents did. *See Santana v. Rainbow Cleaners, Inc.*, 969 A.2d 653, 658 (R.I. 2009) (recognizing the general principle of negligence that "[t]here is ordinarily no duty to control a third party's conduct to prevent harm to another individual").

This leads to our consideration of the remaining two *Banks* factors, which we conclude also compel the conclusion that defendants owed no duty to Yendee. *See Banks*, 522 A.2d at 1225 (explaining the last two factors as the policy of preventing future harm and the extent of the burden to the defendant and the consequences to the community for imposing a duty to exercise care). Because Yendee did not suffer

a legally recognized injury, there is no future harm to be prevented by the imposition of a duty upon defendants. *See id.*

In sum, considering the facts of this case in conjunction with Rhode Island law and the prevailing view of jurisdictions that have considered the same issue, we conclude that there is no duty owed to a child born with physical defects who alleges that, because of negligence, his or her parents either (1) decided to conceive the child in ignorance of the risk of impairment, or (2) were deprived of information that would have caused them to terminate the pregnancy. The instant case presents no issues of material fact and, as a matter of law, the defendants owed Yendee no duty; therefore, she cannot prevail on the claims advanced against them for negligence, as well as corporate and vicarious liabilities. Because we have determined that all Yendee's claims fail as a matter of law, Jean and Bunsan's loss-of-consortium claims necessarily fail alongside them because their claims are derivative and dependent upon Yendee's claims. *See Desjarlais v. USAA Insurance Company*, 824 A.2d 1272, 1280 (R.I. 2003) (acknowledging that a "loss-of-consortium claim is strictly derivative and inextricably tied to the resolution of the impaired party's claims").

**Conclusion**

For these reasons, we affirm the judgments of the Superior Court. The papers in this case may be returned to the Superior Court.

Justice Goldberg and Justice Long did not participate.



## STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE

Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Jean Ho Rath, et al v. Corning Incorporated et al.<br><br>Yendee Ho-Rath et al. v. Rhode Island Hospital, et al. |
| **Case Number** | No. 2020-227-Appeal.<br>(PC 10-4186)<br><br>No. 2020-228-Appeal.<br>(PC 17-125) |
| **Date Opinion Filed** | May 27, 2022 |
| **Justices** | Suttell, C.J., Robinson, and Lynch Prata, JJ. |
| **Written By** | Associate Justice Erin Lynch Prata |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Melissa E. Darigan |
| **Attorney(s) on Appeal** | For Plaintiffs:<br><br>Amato A. Deluca, Esq. |
| | For Defendants:<br><br>Jeffrey S. Brenner, Esq.<br>William H. Jestings, Esq.<br>Robert P. Landau, Esq.<br>Stanley F. Pupecki, Esq. |